COMSTOCK and wife *vs.* BEARDSLEY.

The deed of the comptroller of lands *sold for taxes* is inoperative as a convey-. ance, unless, among other things, the purchaser *gives notice* of such sale, and of the terms upon which the lands may be redeemed to the person or persons, if any, in the *actual possession* or *occupancy* of the lands.

Any person liable to be taxed for the real estate he occupies, is, within the meaning of the act requiring notice, an *occupant ;* it is not necessary that his possession should be of such a character, as that after twenty years continuance it should ripen into a title.

The comptroller's deed is inoperative even as to *unoccupied* and *unimproved* lands, if such lands constitute a portion of an *entire lot* conveyed by the comptroller, and other portions of the lot are *actually possessed* or *occupied*, and notice *has not been given* to the person or persons in such actual possession or occupancy.

THIS was an action of *ejectment* for the recovery of a lot of land of 420 acres, except 48 acres in the south-east corner thereof. The plaintiffs showed title and rested. The defendant produced in evidence a deed from the *comptroller of the state* to James Hooker and Nathaniel P. Tallmadge, bearing date 27th June, 1828, conveying to them the *premises in question,* in pursuance of a sale for *non-payment of taxes.* The plaintiffs then proved that one John K. Bean occupied the lot from 1824 to 1830, that from 40 to 70 acres of the lot were cleared and cultivated, that Bean had a dwelling house on the lot, in which he resided except during the summer of 1828, when he was from home working out as a laborer, but during his absence his wife occupied the house and a garden adjoining. The residue of the lot was occupied by two individuals, under a lease from Bean at a rent of $30, who cultivated the *improved* part of the lot, and made potash on the *unimproved* part. No evidence was offered of any *notice to redeem* given to the occupants of the land. The judge thereupon directed the jury to find a verdict for the plaintiffs, *for so much of the land as was actually improved* at the date of the comptroller's deed, *but for no more.* The jury found accordingly. The plaintiffs having excepted to the charge, now moved for a new trial.

*S. Stevens*, for the plaintiffs.

*A. Taber*, for the defendant.

*By the Court*, NELSON, J. The material question in this case is, whether the whole of the premises in question were actually in the possession and occupancy of Bean or any other person at the date of the deed from the comptroller. If they were, then the title under that conveyance is defective for want of proper notice to redeem. 7 *Wendell*, 148. An occupancy that would constitute a good adverse possession of the entire lot, and which might ripen into a title in twenty years, was not within the contemplation of the statute. It was not intended to regard the title of the land thus sold, but the object was to afford to any person, who might happen to be an occupant at the date of the deed, an opportunity to redeem, presuming that he was either owner or in some way legally interested in the land. The act for the assessment and collection of taxes, *Laws of* 1823, *p.* 390, subjects the *occupant* to assessment and taxation for real estate, and it is only when lands are unoccupied that they can be returned as non-resident lands. § 6, 7. This act and that of 1819 are *in pari materia*, and the term *occupant* used, to convey the same idea in both of them. Though there was no person in the occupation at the time the assessment was made, and therefore the land must be returned as non-resident, yet, if an occupant is found there at the date of the deed, he must be called upon for the tax, together with interest and expenses that have accrued, before he can be dispossessed ; and the occupancy and possession in the latter is just such an one as is contemplated by the act in the former instance. Now, it appears that Bean had occupied the lot for six years, from 1824 to 1830, except during the summer of 1828, when he was temporarily absent as a laborer, leaving his family on the premises, and renting the farm for the season to other persons. Upon these facts, would the assessors have been justified in returning the lands as non-resident lands ? I think not. Bean himself and by his tenants was in the actual occupation and possession of the whole of the lot, and he clearly was

taxable under the act of 1823. There existed no difficulty in giving the proper notice under the statute. Every necessary fact for this purpose could have been ascertained upon the premises.

The judge, I think, also erred in the distinction taken between the *improved* and *unimproved* parts of the lot, holding that notice was necessary before the title of the purchaser became perfect as to the former, but not as to the latter. I have already expressed the opinion that there was an occupation and possession of the *entire* lot, within the spirit and meaning of the statute, which is one answer to this distinction. But the act of 1819 incorporated into the act of 1823, *Laws of 1823, p.* 407, § 45, provides that, in case of every sale and conveyance for taxes, by the comptroller, of lands which *at the time of the conveyance* are in the *actual possession and occupancy of any person*, a written notice shall be served on *him*, or left at his *dwelling house*, stating in substance the sale and conveyance, to whom made, and the amount of consideration after adding 37½ per cent., and that unless the same shall be paid into the treasury, for the benefit of the purchaser, within six months, the deed to him will be absolute, and the occupant and all others interested in the land will be forever barred from all right and title to the same. The act then provides that the receipt of the treasurer, countersigned by the comptroller, stating the payment and for what land it was intended to redeem, shall as effectually redeem it, notwithstanding the sale and conveyance, as if paid within the two years after the sale. Now, in this case, the whole lot was sold for taxes in arrear, in *one parcel;* and it seems to me clear, upon the above section, that if *part* was actually occupied at the date of the deed, even if the residue is to be deemed vacant land, the occupant is entitled to redeem the whole ; and if so, is entitled to notice for that purpose. The deed does not become absolute in respect to any part till such notice and default of payment ; for in case of *every sale* and *conveyance* of lands in the actual possession and occupation of any person, notice shall be served, stating, among other things the amount *of consideration, the thirty-seven and a half per cent., and cost of deed, Laws of* 1827, *p.* 4, § 4; and *the*

*whole amount* must be paid, and when paid, the *whole pur-*
*chase* is redeemed, and the title of the purchaser divested. The
occupant cannot redeem without paying the whole purchase
money, together with interest and expenses, though in pos-
session of part only. He would have a remedy over against
the owner of the residue. I cannot perceive how the pur-
chaser can escape giving the notice, by consenting to take
the unoccupied part, since it is not distinguished from that oc-
cupied, by the statute, where both are included in one bid.
If there is an occupant of part only he is entitled to notice
before his possession can be disturbed. Each notice calls for
the whole purchase money. On failure to comply with its
requirements, the whole title becomes absolute ; on compli-
ance, the whole is defeated. As the purchaser may compel
the occupant of part, upon notice, to redeem the whole lot or
forfeit his share of it, it should not be left optional with him
either to give such notice or compound with the occupant, and
take the residue of the bid without notice.

New trial granted.