CLINTON GENERAL TERM, July, 1848.   *Paige, Willard,*
*and Hand,* Justices.

SMITH *vs.* SANGER.

No title passes, to the purchaser of land sold for taxes, under the comptroller's deed, if any part of the land is actually occupied by another at the time of the sale, until notice of the sale has been served upon the occupant, and an affidavit of such service filed, and the certificate of the comptroller obtained, as required by the statute.

The performance of these acts is a condition precedent to the vesting of the title, and if such acts are not done by the purchaser, the comptroller's deed is not only inoperative as to the part of the land actually occupied, but it is also inoperative as to the part unoccupied. The condition precedent cannot be apportioned or divided, to the end that the deed may avail as to the unoccupied land.

The giving of the notice, and the performance of the other acts constituting the condition precedent, cannot be waived by an occupant who has no interest in the land, to the prejudice of the owner.

It is not necessary that the occupation should be by the owner, or by a person having an interest in the land, to create the necessity of a service of the notice required by the statute, upon the occupant.

The statute calls for the service of the notice wherever there is an actual occupancy; an occupancy by any person, whether he has an interest in the land or not.

What amounts to an actual occupancy of land sold by the comptroller for taxes, within the meaning of the section of the statute requiring notice of the sale to be given to the occupant.

To create an actual occupancy, within the meaning of the statute respecting the sale of lands for taxes, it is not necessary that the part actually occupied, of a lot of land sold for taxes, should be occupied professedly as a part of such lot. If such part is occupied as a part of another lot, it is equally an occupancy, and is as effectual as if it were occupied as a part of the lot sold.

It is not necessary that there should be a constructive occupancy of the whole of the lot sold, in order to bring an occupancy of a part within the statute.

Ignorance of the true location of a boundary line, cannot defeat the legal effect of a practical location.

It is not necessary, in order to make an actual practical location control the courses and distances in a deed, that the party making such location, or acquiescing in it, should know that the effect of it will be to give him less land than he otherwise would be entitled to.

It is the duty of the court to nonsuit a plaintiff, when the evidence will not authorize a jury to find a verdict for him; or where the court would set it aside if so found, as contrary to evidence, or against the clear weight and effect of the evidence.

THIS was a motion, by the plaintiff, to set aside a nonsuit, and for a new trial.   The action was trespass, for cutting wood

Smith *v.* Sanger.

and timber on lot 84 in Duer's patent, in the town of Beekman-town, in the county of Clinton. The defendant pleaded the general issue, and gave notice of a license from the heirs of Benjamin Taylor, &c. The cause was tried at the Clinton circuit in January, 1848. The plaintiff, on the trial, gave in evidence a deed from the comptroller to him, of said lot 84, dated August 1, 1845, given in pursuance of a sale of the lot for taxes. The plaintiff also gave in evidence a copy of the assessment of the taxes on said lot, assessed from 1814 to 1840. The plaintiff proved the cutting, by the defendant, on lot 84, in the fall of 1845, of 40 or 50 cords of wood. Henry Ray testified that the south line ran through Ezra Vaughn's meadow; that a part of Vaughn's meadow was on lot 84; and that it had been mowed the last season. Daniel B. Johnson, a surveyor, testified that lot 84 lay north of Ezra Vaughn; that the south line ran through a piece of meadow; that there was about 2½ square rods of land north of the south line mowed the last year; that the clearing looked like an old clearing. Samuel Shaw testified that there was the bottom of an old stone wall on or near the south line of lot 57, (which lies west of 84;) that about 40 rods east of this stone wall there was a fence, which ran east along or near the south line of 57 and 84; that a few rods east of the S. W. corner of 84, this fence turned or bowed around to the north and crossed the south line of 84, and then, at a short distance, crossed back to the south side of the line, leaving a little nook of lot 84 south of the fence and north of the line; that this nook contained 2½ square rods; that it had been mowed; that this fence was a brush fence and was crooked; and that no one lived on lot 4 of the gore, (which lay south of and adjoining lots 57 and 84.) Joseph Brewster testified that in 1844 he, one Shew and one Edward Jenkins mowed the meadow on lot 4 of the gore, and mowed in the nook of the fence before described, on lot 84; that Shew had charge of, and occupied, lot 4, all that season. Joseph M. Baker testified that he owned the betterments on lot 57 in 1829, 1830 and 1831; that a brush fence ran east from the southeast corner of 57, along the side of the gore, and was on the north

side of the line as he supposed ; that he bought the betterments on lot 57 and lot 4 of the gore, of Francis Thurber, who he supposed, had no title. Frederick W. Baker testified that he took possession of lot 4 of the gore in 1845 ; he mowed the small piece in the nook north of the south line of 84, in 1845 ; he made a contract to purchase lot 4 of the gore and lot 1 of the little location, on the 2d of July, 1845, and took possession of the same on that day ; these lots were in the same farm ; the house was on lot No. 1 ; Charles R. Vaughn owned both these lots No. 4 and No. 1, while Jenkins and Shew had possession of them ; Jenkins and Shew had possession in 1843 and 1844, and continued in possession until April 22d, 1845 ; Edward Jenkins continued to reside on lot No. 1, until the fall of 1845 ; on the 22d of April, 1845, the lots went into possession of Charles Vaughn ; witness held possession of lot 4 until April, 1846 ; he made the bargain to purchase lots 4 and 1 of the plaintiff, through Caleb Calkins, his agent ; in the fall of 1845 witness informed plaintiff's agent that a small part of lot 84 was in his possession ; soon after witness purchased in July, 1845, he and Robert and Henry Ostrander repaired the brush fence between lot 4 of the gore and lots 57 and 84 ; R. and H. Ostrander claimed lot 57 ; the contract under which witness entered into possession of lot No. 4 of the gore, was originally given by the plaintiff to William Ostrander, and from him it had passed through several hands by assignment ; it came to witness directly from Calkins on the 2d of July, 1845, and witness took immediate possession under it ; witness sold out his interest in the contract for lot No. 4 to Ezra Vaughn on the 16th of November, 1846 ; the piece of land in the nook north of south line of 84, witness had known as a meadow for 10 years, and it was enclosed by the brush fence with the meadow on lot 4 ; when witness bought lot 4, he did not know that the fence enclosed any part of 84 ; but soon afterwards he became satisfied that it did, and he then informed Calkins of the fact. Charles R. Vaughn testified that he held in 1844, and up to July, 1845, the contract for lot 4 of the gore, when it passed to Frederick Baker ; and that he never claimed to occupy or be in possession

of any part of lot 84. The defendant moved for a nonsuit. The plaintiff, in opposition to the motion, asked the court to submit the question of occupancy to the jury, which the judge refused to do, and the plaintiff excepted. The plaintiff insisted that as Frederick W. Baker, and those who had occupied lot No. 4 of the gore before him, took possession of that lot under the plaintiff, and when they took possession did not know that the brush fence included any part of lot 84, and did not claim any part of that lot, it was not such an occupancy as was contemplated by the statute; and that running a brush fence across the line, and cutting the grass, was merely a trespass, and did not constitute an occupancy, at the date of the comptroller's deed, within the meaning of the statute. The court nonsuited the plaintiff, and the plaintiff excepted.

*A. C. Moore,* for the plaintiff.

*D. L. McMasters,* for the defendant.

*By the Court,* PAIGE, J. The revised statutes (*vol.* 1, *p.* 412, § 83, 1*st ed.*) provide, that, whenever any lands sold for taxes by the comptroller shall, at the time of the conveyance, be in the actual occupancy of any person, the grantee to whom the same shall have been conveyed, or the person claiming under him, shall serve a written notice on the person occupying such land, stating in substance the sale and conveyance, the person to whom made, and the amount of the consideration money mentioned in the conveyance, &c.; and stating also that unless such consideration money, &c. shall be paid into the treasury, for the benefit of such grantee, within six months after the service of such notice, the conveyance of the comptroller will become absolute, and the occupant and all others interested in the land be forever barred from all right or title thereto. Section 85 provides that the occupant, or any other person, may, at any time within the six months mentioned in such notice, redeem the land sold, by paying into the treasury the consideration money, &c. Section 87 declares that in every case of

Smith *v.* Sanger.

actual occupancy, the grantee, &c. in order to complete his title to the land conveyed, must file with the comptroller an affidavit of the service of such notice. And section 88 provides, if the comptroller shall be satisfied by such affidavit, that the notice has been duly served, and if the moneys required to be paid into the treasury for the redemption of such land, shall not have been paid, he shall certify the fact, and the conveyance before made by him shall thereupon become absolute.

The question in this case is, whether there was such an occupancy, by Frederick W. Baker, of a part of lot 84 in Duer's patent, at the date of the comptroller's deed to the plaintiff, as came within the meaning of the revised statutes. If Baker was an actual occupant of a part of lot 84 at the time of the conveyance to the plaintiff, the latter could acquire no title under such conveyance, without serving the notice on the occupant, and filing the affidavit of such service, and obtaining the comptroller's certificate, required by the 83d, 87th, and 88th sections of the revised statutes, (*vol.* 1, *p.* 412, 1*st ed.*) No title passes to the grantee until such notice has been served, and such affidavit filed, and such certificate obtained. The performance of these acts Judge Cowen, in *Bush* v. *Davison,* (16 *Wend.* 554,) says constitutes " a condition precedent, to all intents and purposes, and that without showing affirmatively the literal performance of it, the (comptroller's) deed still remained mere waste paper, of no more effect than the sale under a mortgage power without advertisement," &c. Without the previous performance of this condition precedent, the comptroller's deed is not only inoperative as to the part of the land actually occupied, but it is also inoperative as to the part unoccupied. Cowen, J., in the same case says, that " the condition is an entire thing. So is the conveyance and the title. So the tax, the land and the right to redeem. The condition imposed by the statute has arisen if a single foot of land was actually occupied." The condition, he says, " must be performed before the deed can operate to pass the title of the owner; or, in the language of the statute, before the grantee can complete his title to the land conveyed." The notice, the affidavit and certificate being a

Smith *v.* Sanger.

condition precedent, whenever there is occupied land covered by the deed, it cannot be apportioned or divided, to the end that the deed may avail as to the unoccupied land. (*Comstock* v. *Beardsley,* 15 *Wend.* 348; 5 *Hill,* 286.) The statute seems to have been intended for the benefit not only of the occupant, but also of every other person who has any interest in the land sold. For it provides that "the occupant, or any other person," may redeem the land. The giving of the notice, and the performance of the other acts constituting the condition precedent, cannot be waived by the occupant who has no interest in the land, to the prejudice of the owner. It is not necessary that the occupation should be by the owner, or by a person having an interest in the land, to create the necessity of a service of the notice. (*Jackson* v. *Esty,* 7 *Wend.* 150.) The statute calls for the service of the notice wherever there is an actual occupancy; an occupancy by any person, whether he has an interest in the land or not. In *Jackson* v. *Esty,* the occupant held nothing but the possession or *betterments;* and made no claim of title to the land. He was a mere squatter; and the defendant who had succeeded to the rights of the occupant, had offered to purchase of the lessors of the plaintiff. But it was held that, as the premises were actually occupied at the date of the comptroller's deed, the service of the notice was necessary.

It was evidently not intended, in the adoption of the statute, to require an occupancy connected with the title, but the object was to afford to the person who might happen, at the date of the deed, to be an occupant, and to every other person who had an interest in the land, an opportunity to redeem the whole of the land sold. Thus, in *Comstock* v. *Beardsley,* (15 *Wend.* 348,) it was held that any person in the possession of land, and liable to assessment and taxation therefor, was an occupant, within the meaning of the statute, and as such must be served with notice. The revised statutes, (1 *R. S.* 389, § 2, 1*st ed.*) subject the mere occupant to assessment and taxation for real estate. The second section declares that land owned by a person residing in the town, but occupied by another, may be

Smith *v.* Sanger.

assessed in the name of the owner or occupant; thus recognizing a distinction between persons who hold the title to the land and the mere occupant who has no title thereto. (*See Laws of* 1836, *p.* 241, § 27.) Not even an occupancy, which would constitute an adverse possession, is necessary, to call for the service of the notice required by the statute, in relation to sales of lands for taxes. It was so held by Nelson, J. in 15 *Wend.* 349. In *Jackson* v. *Esty*, (7 *Id.* 150,) the occupant was a mere squatter, claiming no title ; and in *Bush* v. *Davison*, he was a mere tenant at sufferance ; and yet in both cases it was held that the occupancy was within the meaning of the statute.

It seems to me, therefore, that in the case of a comptroller's deed on a sale for taxes, the only question in relation to the necessity of service of notice, is, whether there was an actual occupancy of any part of the land sold, irrespective, altogether, of the occupant's interest in the land. An occupant is defined, in 2 *Bouvier's Law Dict.* 242, to be one who has the actual use or possession of a thing. Webster defines occupant to be " one who has possession." In common parlance occupancy is synonymous with possession. In this case, the only question is, did Frederick Baker actually occupy or possess the 2½ square rods of lot No. 84, enclosed by the brush fence with the meadow on lot No. 4 of the gore, at the date of the comptroller's deed ? It seems that Baker took possession of lot No. 4 of the gore, on the 2d of July, 1845. He went into possession, under a contract to purchase lot No. 4 and lot No. 1 of the little location. Both lots were in the same farm. The dwelling house was on lot No. 1. When Baker took possession, the 2½ square rods were enclosed by the brush fence along the north line of lot No. 4, with the meadow on that lot. He mowed this 2½ square rods in 1845, and continued in possession thereof in connection with the residue of lot No. 4, from July 2d, 1845, until November, 1846. This small piece of land, part of lot 84, had been used as a part of the meadow on lot 4, by the previous occupants of that lot, for ten years ; it had been enclosed by the brush fence with the meadow of that lot ; and it had been

mowed for several years previous to the possession of Baker, by such occupants. This evidence I think sufficient to make out an actual occupancy by Baker, at the date of the comptroller's deed, of the $2\frac{1}{2}$ square rods, a part of lot 84, within the meaning of the revised statutes. If Baker was an actual occupant, at the date of the deed, his ignorance of the fact that the brush fence included a part of lot 84, and the fact of his not claiming the $2\frac{1}{2}$ square rods as a part of that lot cannot, in my judgment, displace or defeat his actual occupancy. His entry upon lot No. 4 of the gore, under his contract, and his taking possession of and claiming the $2\frac{1}{2}$ square rods as a part of lot 4, he believing that the brush fence which included this small parcel of land was on the north line of that lot, was a good practical location of the north line of lot No. 4; and if acquiesced in by the owner of lot 84 for a sufficient length of time to bar a right of entry, such location could not be disturbed; and Baker would acquire a perfect title to the part of 84 embraced by such practical location. Practical locations of boundary lines are in general made where the parties are ignorant of the true lines; and they are made under a belief that such locations are correct. Ignorance of the true location cannot defeat the legal effect of a practical location. (*Rockwell* v. *Adams*, 7 *Cowen*, 761, *S. C.* 6 *Wend.* 468, *S. C.* 16 *Id.* 302.) It is not necessary, in order to make an actual practical location control the courses and distances in a deed, that the party making such location, or acquiescing in it, should know that the effect of it will be to give him less land than he otherwise would be entitled to.

If the evidence authorizes the inference that the brush fence between lot No. 4 and lot 84, was sufficient to protect the meadow from the intrusion of cattle, (which I think it does,) it may be regarded as a substantial enclosure; and if it was a substantial enclosure, the possession of Baker, had there been no contract of purchase and no disclaimer of title, would have been an adverse possession. (2 *R. S.* 294. 5 *Cowen*, 220.) If the possession of Baker was sufficient to constitute an adverse possession, it is very clear that it was at least an actual occupancy.

Smith v. Sanger.

To create an actual occupancy, within the meaning of the statute, it cannot be necessary that the part actually occupied, of a lot of land sold for taxes, should be occupied professedly as a part of such lot. If such part is occupied as a part of another lot, it is equally an occupancy, and is as effectual as if it had been occupied as a part of the lot sold. It is not necessary, under the decisions in the cases cited, that there should be a constructive occupancy of the whole of the land sold, in order to bring an occupancy of a part within the statute. If a constructive occupany of the whole is required, it may be necessary, as is contended by the plaintiff's counsel, that the occupancy of the part should be in the name of, and as a part of, the whole.

I cannot see how Baker's entry into possession, under a contract of purchase from the plaintiff, of lot No. 4, could deprive him of the character of an actual occupant of the 2½ square rods of lot 84 included within the brush fence. Baker, by his entry, under a contract of purchase from the plaintiff, did not become his tenant. No relation of landlord and tenant existed between them. Baker was not entitled to notice to quit, nor liable to distress, or to an action for rent. (*Smith* v. *Stewart*, 6 *John.* 46.) He was only estopped from denying the plaintiff's title to lot No. 4 until he obtained his deed, in pursuance of the contract of purchase. (*Jackson* v. *Hotchkiss*, 6 *Cowen*, 401. 5 *Wend.* 248.) As soon as he obtained his deed, the estoppel would cease. After receiving his deed, he would hold adversely to the plaintiff, and would be at liberty to controvert his title. (3 *Hill*, 518. 7 *Wheat.* 535. 4 *Peters*, 506. *Averill* v. *Wilson, decided by the supreme court held for the 4th district, in November*, 1848.) But there is another answer to this objection. Baker's contract did not embrace any part of lot 84. He·could not, therefore, be said to hold or occupy any part of lot 84 as the tenant under the plaintiff.

There being no conflict in the evidence on the subject of occupancy, there was nothing for the jury to pass upon; and as the facts would not have justified the jury in finding a verdict for the plaintiff, he was properly nonsuited. It is the duty

of the court to nonsuit the plaintiff when the evidence will not authorize a jury to find a verdict for him, or when the court would set it aside if so found, as contrary to evidence, or against the clear weight and effect of the evidence. (*Stuart* v. *Simpson*, 1 *Wend.* 376. *Rudd* v. *Davis*, 3 *Hill*, 287.)

On the trial of this cause, I was at first inclined, especially in consequence of the trifling extent of the actual occupancy shown in the case, to hold that the comptroller's deed was operative as to the whole of lot 84 not occupied at its date, and that it was only inoperative as to the small piece shown to have been occupied at that time by Baker. But on being referred to the case of *Bush* v. *Davison*, (16 *Wend.* 554,) in which Judge Cowen held that " the condition imposed by the statute has arisen if a single foot of land was actually occupied," and that the condition was an entire thing and could not be apportioned or divided, I felt myself bound by that decision, and compelled to dispose of the case in conformity to the principles settled by it.

The motion to set aside the nonsuit, and for a new trial, must be denied.

