The opinion of the court was delivered by
Valentine, J.:
This was an action brought by Scoffins, plaintiff in error, for the recovery of the possession of a certain twenty-acre tract of land situated in Wyandotte county. The facts are substantially as follows: The land in controversy is a portion of the lands assigned to individuals and families of the Shawnee tribe of Indians under the treaty between the United States and said tribe of Indians of May 10th, 1854. *468 (10 U. S. Stat. at Large, 1053.) In accordance with the provisions of said treaty the land in controversy was set apart and assigned to one Thomas Bigknife, a Shawnee Indian. Afterward, on the 28th of December 1859, a patent was issued by the United States to said Bigknife for said land. In accordance with the provisions of said treaty, (art. 9,) and of an act of congress of March 3d 1859, (11 Stat. at Large, 430, § 11,) said patent contained the following restrictive clause, to-wit: “That the said tracts shall never be sold or conveyed by the grantee, or his heirs, without the consent of the Secretary of the.Interior for the time being.” On the 22d of January 1864, said Bigknife executed and delivered an ordinary warranty deed for said land to said Scoffins. This deed was never approved by the Secretary of the Interior, and hence it seems to be admitted by both parties that this deed was void — and we shall therefore assume for the purposes of this case that said deed was and is void. Whether Scoffins took possession of said land under said deed, the court below does not find. But as there was some evidence tending to show that he did take such possession, we shall assume for the purposes of the case that such was the fact. “On the 23d of September 1867,” (says the third finding of the court below,) “the said William Scoffins and his wife executed and delivered a deed of general warranty of said premises to one Robert Adams. Said deed contained full covenants of seisin, against incumbrances, and a warranty for quiet enjoyment and possession. * * * Upon the execution and delivery of said deed the grantee, Robert Adams, took immediate and exclusive possession of said premises, and continued to hold the same until the 17th of December 1867.” On the 17th of December 1867, Robert Adams and wife executed and delivered a quitclaim deed to Mary Ann Purdon for said premises, and she took immediate possession of the premises under said quitclaim deed. The granting portion of said quitclaim deed reads as follows: “have remised, released and quitclaiined,and by these presents do remise, release and forever quitclaim.”. The habendum reads as follows: “To have and to hold the *469 same unto the said Mary Ann Purdon, her heirs and assigns forever, together with all the rights and privileges thereunto belonging or in anywise appertaining.” Then immediately follows a covenant which reads as follows: “And I, the said Robert Adams, hereby covenanting that said premises are free and clear of all incumbrances created by me, but against none other.” The defendants, Abraham Grandstaff and Ellen Grandstaff his wife, hold under the grantee of Mary Ann Purdon, and they are now in the possession of the property; and indeed Mary Ann Purdon 'and her grantees have been in possession of the property ever since she purchased the same from Adams. On the 1st of December 1868, Thomas Big-knife, with the consent of the Secretary of the Interior, conveyed the land in controversy to one Harry McBride by a general warranty deed, which deed was duly approved by the Secretary of tlie Interior on the 30th of January 1869. On the 3d of August 1869, Harry McBride and wife conveyed said land to said William Scoffins, plaintiff, by a deed of general warranty. On the 12th of April 1870, Robert Adams and wife conveyed said land by a quitclaim deed to said William Scoffins.
The real question presented by the foregoing facts is, who . owns said land — William Scoffins, the plaintiff, or Abraham and Ellen Grandstaff, the defendants? It is admitted that the deed from Bigknife to Scoffins was void, and conveyed no title. And for that reason it is also admitted, that the deeds from Scoffins to Adams, and from Adams to Purdon, under whom the Grandstaffs now claim, did in like manner convey no title. While on the other hand it seems to be admitted that the deeds from Bigknife to McBride, and from McBride to Scoffins, passed the title to Scoffins. And we suppose it will also be admitted that under our 'statutes the title when it passed by said deed to Scoffins immediately inured to the benefit of Scoffins’ grantee, to-wit, Adams. (Comp. Laws, 354, § 4; Gen. Stat., 185, ch. 22, § 5.) But as the deed from Adams to Purdon was only a quitclaim deed, purporting to convey only the interest that Adams had *470 in the land at the time of the conveyance, and nothing more, said title did not and could not, when Adams received it, inure to the benefit of Purdon, or to the benefit of any of Purdon’s grantees. (Simpson v. Greeley, 8 Kas., 586, 597, 598; Bruce v. Luke, 9 Kas., 201, 207, et seq.) And therefore we suppose it follows, that Adams might have retained the title to said land forever, if he had so chosen, and neither Purdon nor any of her grantees would have had any action against him on that account, nor any defense to an action brought by Adams for the possession of the land. And we suppose it also follows, that Adams might have sold and conveyed his title to any one except Scoffins, and the grantee under such conveyance would have had the same right that Adams himself possessed. But Adams did not retain the title to said land, nor did he transfer it to some person other than Scoffins; but after the title had inured to him as aforesaid he transferred the same back to Scoffins by a quitclaim deed, and therefore the question of who has the title now comes up between Scoffins, and Purdon’s grantees, to-wit, the said Grandstafik The covenants in the deed from Scoffins to Adams read as follows: “And the said William Scoffins and Louisa Scoffins do hereby covenant and agree that at the delivery hereof they are the lawful owners of the premises above granted, and seized of a good and indefeasible estate of inheritance therein, free and clear of all incumbrances, and that they will warrant and defend the above granted premises, in the quiet and peaceable possession of the said party of the second part, his heirs and assigns forever.”
The first, second, and third of these covenants, to-wit, the covenant of ownership, the covenant of seisin, and the covenant against incumbrances, are personal covenants, and do not run with the land. The first and second of these covenants were broken at the time of the delivery of the deed, and because of such breach an action immediately accrued thereon in favor of Adams and against Scoffins for the actual loss sustained by Adams. How losses shall be estimated in cases like this depends upon the circumstances of each indi *471 vidual case. The amount of the loss is usually the purchase-money, with interest. It is always such amount where the grantee himself loses the land, or where he himself pays that amount or more in purchasing in the paramount title. But where the grantee takes possession of the property under his deed, and retains the uninterrupted possession thereof, without paying anything to purchase in the paramoun# title, he can only recover nominal damages. Now, as Adams took possession of said land under the deed from Scoffins, and as he has never been disturbed in his possession, but has sold the property with the possession to Purdon, putting Purdon in possession and thereby putting it out of the power of any one ever to disturb his (Adams’) possession, and as he has never paid anything in purchasing in the paramount title, nor become liable to pay anything, we suppose he could at most recover only nominal damages from Scoffins. And this is particularly true for the further reason that the subsequently-acquired title of Scoffins inured to the benefit of Adams as aforesaid. We cite the following authorities as tending to establish the foregoing propositions: Morrison v. Underwood, 20 N. H., 369; Rees v. Smith, 12 Mo., 344; Wilson v. Forbes, 2 Devereux, (N. C.) 30; Middlebury College v. Cheney, 1 Vt., 349; Garfield v. Williams, 2 Vt., 327; Baxter v. Bradbury, 20 Me., 260; King v. Gilson, 32 Ill., 349, 355, 356; Burk v. Beveridge, 15 Minn., 208; McCarty v. Leggett, 3 Hill, 134; Prescott v. Trueman, 4 Mass., 627; Cotton v. Word, 3 Monroe, 304; Brandt v. Foster, 5 Iowa, 287, 294 to 296.
The third covenant in said deed, to-wit, the covenant against incumbrances, was never broken and never will be; but if it had been broken, no recovery, except for nominal damages merely, could be had for the breach until some actual loss had been sustained, such for instance as the loss of the land, or the payment of money to extinguish the incumbrance. (Rawle on Covenants, 4th ed., 288, et seq.)
The fourth covenant, to-wit, the covenant for “quiet and peaceable possession,” or in other words the covenant for *472 “quiet enjoyment,” is a covenant that runs with the land; and where such a covenant is inserted in the deed, and where the grantor at the time of making the deed is in possession of the property, and puts his grantee in possession thereof, as in this case, the covenant can only be broken by eviction, actual or constructive, and when broken the person supposed to be the Awner of the land for the time being under said grantor, and he only, can maintain an action for the breach of the covenant. And it makes no difference who this supposed owner may be, provided he can trace his title back to the original grantor, and show that he holds under him. He may be the original grantee himself, or any heir, devisee, or grantee of such original grantee, or any person holding under such heir, devisee or grantee down through successive inheritances, devises, and alienations, to the last person who may hold the property. Such covenants as this are made in terms not only to the original grantee, but also to “his heirs and assignsand a person holding under a quitclaim deed from the original grantee is as much an assign of -the original grantee, and is as much entitled to all the rights of such an assign, as though he held under any other kind of conveyance. This has often been held in actions brought by such assigns for breaches of such covenants. Beddoe v. Wadsworth, 21 Wend., 120; Willson v. Widenham, 51 Me., 566; Braddy v. Spruck, 27 Ill., 479, 482; Redwine v. Browne, 10 Geo., 311, 319; Markland v. Crump, 1 Dev. and Batt., (N. C.) 94. Therefore, when Adams executed said quitclaim deed to Purdon, he transferred to Purdon all his right to sue Scoffins for any breach of said covenant for quiet enjoyment which might subsequently occur; and also transferred to Purdon every other right which Adams himself would have had under the covenant provided he had retained the land himself; and the Grandstaffs have succeeded to all the rights that Purdon had. There has'as yet been no breach of said covenant. The Grandstaffs who hold under Purdon, as her assigns, arc still in quiet and peaceable possession and enjoyment of said property. No one except Scoffins has ever *473 attempted to disturb their possession or enjoyment. But Scoffins has now commenced this action for the purpose of evicting them from the premises. Scoffins covenanted to “warrant and defend” said “premises, in the quiet and peaceable possession of said ” Adams, “ his heirs and assigns forever.” But he is now attempting to evict the assigns of Adams. He is attempting to commit a breach of his own covenant. Will he be allowed to do it? We think not. The law of equitable estoppel will .bar him from doing such a thing. We are not aware of any reported case precisely like the one at bar. The principle however involved in this case was substantially decided in the case of Dudley v. Caldwell, 19 Conn., 218. In order however to make said case applicable to this, it must be remembered that in Connecticut a mortgage-deed conveys the title to the land, and does not merely create a lien thereon, as in this state. There are-many reported cases however where it has been held that a grantor who has executed a deed with the ordinary covenants that run with the land is estopped from setting up an after-acquired title as against any person who has succeeded to the title of his grantee, although such person has succeeded to such title in some- other way than by a warranty deed. For instance, such a grantor is estopped as against the heirs of his grantee: Jones v. King, 25 Ill., 383; Trull v. Eastman, 3 Metc., (Mass.) 121; Lowry v. Williams, 13 Maine, 281; Logan v. Moore, 7 Dana, (Ky.) 74. He is also estopped as against a purchaser at a sheriff’s sale on an execution against his grantee: Dodge v. Walley, 22 Cal., 225; Kellogg v. Wood, 4 Paige, 578; Brunard v. Walker, 1 Beasley Ch., 140; Dickerson v. Talbot, 14 B. Monroe, 60; Bank v. Mersereau, 3 Barb., 367. And in fact he is estopped as against every person holding under or in privity with his grantee. (Rawle on Covenants, 392, note 1; id., 427, note 1.) We are satisfied that the plaintiff, Scoffins, is estopped by his covenants from denying that he conveyed a good title to Adams, and estopped from setting up any title as against, the defendants who hold under Adams; and it follows, therefore, that the after-acquired *474 title of Scoffins inures by way of equitable estoppel to the benefit of the said defendants.
There are some other questions that might be considered in this case. As we have before stated, Scoffins, who had no title, executed a warranty deed to Adams, and Adams executed a quitclaim deed to Purdon. Afterward Scoffins acquired the paramount title, and this title inured under the statute to Adams. Now the question may be asked, whether said inurement did not extinguish the covenants contained in the deed from Scoffins to Adams. Possibly it did, as between Adams and Scoffins, but it could not have done so as between Purdon and Scoffins, for the covenant for quiet enjoyment had wholly passed from Adams to Purdon before said inurement. But another question may be asked: Suppose that Adams, after the title had inured to him, had retained the same himself, or had transferred it to some person other than Scoffins; and then suppose, that Purdon had been evicted from the premises by the person holding the paramount title: what would have been the measure of damages in an action brought by Purdon against Scoffins on said covenant for quiet enjoyment? We do not desire to express any opinion upon this question. Possibly the damages would have -been merely nominal, but still we think the covenant would not have been wholly extinguished; and if not extinguished, then we think Scoffins is estopped from denying its force in an action like the one at bar.
The judgment of the court below is affirmed.
All the Justices concurring.