THE PEOPLE OF THE STATE OF NEW YORK EX REL. CHARLES R. DICKSON, APPELLANT, v. HARPER GAY-LORD AND OTHERS, AS ASSESSORS; S. DAVIS HUBBARD, TOWN CLERK OF THE TOWN OF HARPERSFIELD, DELAWARE COUNTY, RESPONDENTS.

*Taxation of a farm divided by a town line.*

Where the owner of a farm, a portion of which is situated in each of two adjoining towns (there being no resident upon the farm in question), resides with his father upon an adjacent farm owned by the latter, and wholly situated within one of such towns, and works both farms jointly with his father, the farm divided by the town line is, all of it, properly assessed in the town in which the owner thereof resides.

APPEAL from a judgment in favor of the defendants, entered in the office of the clerk of the county of Delaware on the 20th day of December, 1888, dismissing a writ of *certiorari* to review the assessment made upon the real estate of the relator, with costs. The appellant intending to bring up for review " the judgment, decision of the court and findings upon which the same was rendered, and the exceptions to said decision and findings, and the exceptions to the refusals of the court to find as requested by plaintiff, and all the questions of law raised by said exceptions and judgment, and the questions of fact as well as of law."

The relator prepared a petition in which he alleged that in the year 1888, by the assessors of the town of Harpersfield, he was erroneously and illegally assessed upon a farm of 200 acres for the year 1888, and in his petition claimed that " the whole of said farm is unoccupied, and the said first two parcels, consisting of one hundred and twenty-five acres of land, are legally assessable in the town of Kortright, and not in the town of Harpersfield, and are so assessed

in said town of Kortright, the present year, to your petitioner. And petitioner is the owner of but seventy-five acres of land legally assessable in said town of Harpersfield, or situated therein."

Upon the petition a writ of *certiorari* was issued, to which the defendants filed a return traversing certain matters contained in the petition, and alleging the validity of the action of the assessors of the town of Harpersfield, in 1888, in having assessed the 200 acres of land to the relator. This return was filed in Delaware county clerk's office October 3, 1888. Upon presenting the petition and writ and return thereto to a Special Term in Tioga county, in October, 1888, a reference was had to take "evidence upon the several matters in issue, and particularly concerning the occupancy of the farm and premises of the relator's real estate, and the situation thereof, and who, if anyone, resides thereon, and all the facts concerning the occupation thereof by any person, and concerning the use thereof." * * *

Upon the hearing before the referee several witnesses were sworn and much evidence taken in respect to the issues, which was reported to a Special Term held in Tompkins county in December, 1888, and after hearing counsel for respective parties, the court found "that the relator is, and since about June, 1887, and during the year 1888, has been the sole owner of the farm described in the relator's petition herein; and that 125 acres of said farm is situated in the town of Kortright, and 75 acres of the same is situated in the town of Harpersfield, Delaware county, N. Y. That the relator is an unmarried man, living with his father, David P. Dixon, upon a farm wholly situated within the town of Harpersfield, and adjoining that portion of the relator's farm situated in the town of Harpersfield. That in the year 1888 these defendants assessed the said property in the town of Harpersfield as occupied land, the occupant or owner thereof residing in the said town of Harpersfield. That during the years 1887 and 1888 the said farm has been under the joint occupancy of the relator and his father, David P. Dixon, and has been occupied land within the meaning of the statute regulating the assessment of lands divided by a town line. I find, as conclusion of law, that the land is properly assessed in the town of Harpersfield." Thereupon the Special Term directed a judgment dismissing the relator's petition, with costs to be taxed as in an action.

*C. L. Andrus*, for appellant.

*F. N. Gilbert*, for respondents.

Hardin, P. J. :

Chapter 315 of the Laws of 1886 amended the Revised Statutes and provided as follows :

" Section 4. When the line between two towns, wards or counties divides a farm or lot, the same shall be taxed, if occupied, in the town, ward or county where the occupant resides; if unoccupied, each part shall be assessed in the town, ward, village or county where the same shall lie."

" § 2. All acts or parts of acts inconsistent with this act are hereby repealed."

By virtue of the provisions of the law just quoted the relator was properly assessed in the town of Harpersfield in the year 1888, if the farm of 200 acres in question was an occupied " farm or lot." It was conceded upon the hearing, and established by evidence, that the relator resided in the town of Harpersfield. It was also manifest upon the evidence that the line between the towns of Harpersfield and Kortright divided the farm in question. There was no person residing upon the farm in the year 1888. For many years prior to 1888 David P. Dixon, the father of the relator, had owned the farm of 200 acres and resided thereon. The house was " an old one." In the spring of 1887 the father, David P. Dixon, purchased a farm consisting of 298 acres, adjoining the 200 acres in question, in the town of Harpersfield, upon which 298 acres was a much better house than the one on the 200 acres, and he moved himself and his family, consisting of his wife, the relator and another son named Fred, into the house in Harpersfield. The relator was about twenty-three years of age, unmarried, and having always had his home with his father, continued to reside with him after his father moved upon the 298 acres. It appears, in the evidence, that the town of Harpersfield has a bonded indebtedness of about $30,000; it also appears that the town of Kortright has no bonded indebtedness. A controversy arose in 1887 in respect to which town the farm of 200 acres should be assessed in, and on the sixth of June of

that year the father executed a conveyance of the 200 acres to the son, rather as a gift, no money having passed. In 1888, when the assessors were engaged in making up the list for their roll. they had an interview with David P. Dixon in respect to the assessment of the farm, and he insisted that it should be assessed 125 acres in the town of Kortright, and seventy-five acres only in Harpersfield. The assessors differed with him, and placed the farm of 200 acres upon the roll, extending the same against the name of the relator. The 200 acres are inclosed with a substantial fence; the work done upon the farm was with the teams and tools of the father; the father's dairy was kept and pastured on the farm, although milked on his own farm. There were various crops raised on the farm in 1887; hay was cut, and after the buildings on farm were full, the balance of the crop of hay, grain and corn was stored and fed out of the father's barn near the residence. The team was kept near the residence that did the work upon the 200 acre tract; the hay was drawn to the home farm when needed for fodder; the father and the son worked on the 200 acre farm in digging potatoes and doing the haying with the tools belonging partly to the father and partly to the son, and some of them were stored on the 200 acre parcel; the manner of managing the 200 acre farm apparently was like that which obtained in the management of the 298 acres; the cows were pastured on the 200 acres, passing from one farm to the other; the hay that was cut on the 200 acre farm was fed out to the cattle, and the relator received directions from his father as to the manner of doing the work, and the father paid some of the help which he hired, and the relator paid some of the wages. We think the evidence and circumstances mentioned, together with the things found in the evidence, notwithstanding some conflict in regard thereto, warranted the finding made at the Special Term that the farm was jointly occupied in 1888 by the "relator and his father David P. Dixon, and has been occupied land within the meaning of the statute regulating the assessment of lands divided by a town line." We are not unobservant of the facts and circumstances testified to by the relator and his father David P. Dixon to the contrary of such finding made by the Special Term, but it must be borne in mind that where there was a conflict in the evidence it was for the trial court to determine what credence should be given

to the testimony of the relator and his father, who were largely interested in the issue to which their testimony was addressed.

After a careful perusal of the facts, we are of the opinion that the conclusion upon the evidence of the trial court is in accordance with the weight of the evidence, and should be sustained. We are of the opinion, therefore, that under the statute, which we have quoted, the relator was properly assessed by the assessors in the town of Harpersfield. We think the evidence to establish the occupation is quite as satisfactory as that which was given in *Smith* v. *Sanger* (3 Barb. 360), where the question of occupation was involved. A like observation may be made in respect to the facts and conclusion stated in *Dorn* v. *Backer et al.* (61 N. Y., 262), which case supports the contention of the respondents. So far as *Fellows* v. *Denniston* (23 N. Y., 420) is applicable, it supports the position of the respondents. In *Stewart* v. *Crysler* (100 N. Y., 382), the lands in question were occupied for storage of lumber ; although owned by a non-resident of the State, it was held that they were to be regarded as occupied lands. *Hampton* v. *Hamsher* (46 Hun, 144), contains nothing inconsistent with the views already expressed. The controversy arose prior to the passage of the act of 1886 already quoted ; and in referring to section 4 of the Revised Statutes, the judge observes that the lands mentioned "mean other lands in a town owned by an individual, which he occupies for the purpose of cultivation or improvement either in person or by his servant or agent, but upon which he does not live." The history of the pro-visions of the act of 1886 are referred to at page 111 of the "System of Taxation," edited by Mr. Davies, and is very clearly presented on page 111 of that excellent work. The appellant takes exception to the findings of the trial judge, but as there was some evidence to sustain the findings, the exceptions to the same are unavailable. (*Porter* v. *Smith et al.*, 7 Civ. Pro. Rep., 195.) The appellant proposed several requests for the trial judge to find certain facts mentioned in the requests, but we are of the opinion that as there was a conflict in the evidence in respect to the facts mentioned in the requests, the refusal to find them does not furnish a basis for a reversal of the judgment. We have looked at the other exceptions urged in the argument of the learned counsel for the appellant, and we are of the opinion they furnish no ground

for a reversal of the judgment, and are sufficiently answered by the views already expressed, and we are of the opinion that the judgment ought to be sustained.

Judgment and order affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.