## W. W. LETSON v. JESSE N. ROACH, FRED ROACH AND FRANK BROWN.

### No. 151.

INDIAN GRANTOR — *if a citizen when deed made to Indian lands, estops himself and subsequent grantees by covenant of warranty.* W., who had been a member of the Kickapoo Tribe of Indians, became a citizen of the United States, and thereafter executed a deed of conveyance, with general covenant of warranty, for certain Indian lands in which he had an interest but not the legal title, to one L., who was not an Indian and to whom a conveyance of such lands was, at the time, not authorized by law. Subsequently, the legal title to said lands becoming vested in W. with full power of conveyance, he executed another deed for the same to N. who took with notice of the prior deed. *Held,* that W. and his second grantee were estopped from setting up a title adverse to that attempted to be conveyed by the deed to L.

Error from Atchison District Court. Hon. Robert M. Eaton, Judge. Opinion filed January 9, 1897. *Reversed.*

58 LETSON v. ROACH.

N. Dept. Opinion. Clark, J. 5 Kan. App.

*Jackson & Jackson,* for plaintiff in error.

*A. F. Martin,* for defendants in error.

CLARK, J. This was an action for the partition of forty acres of land in Atchison County. The suit was originally brought by W. C. McClain and Jesse N. Roach as plaintiffs, but, thereafter, whatever interest McClain had in the subject matter of the controversy became vested in Fred Roach and Frank Brown, and, by supplemental proceedings, they were substituted as parties plaintiff with Jesse N. Roach.

From the findings of fact it appears that, under the treaty of May 28, 1863, between the United States and the Kickapoo Tribe of Indians, the forty acres of land in controversy was allotted in severalty to one O-ketch-e, a Kickapoo Indian woman; that thereafter said allottee died, leaving Sha-ne-ke-qua, her daughter, as her sole heir; that Sha-ne-ke-qua afterwards died, leaving as her sole heirs her husband, Wy-tah-the, and her daughter, Qua-is; that Wy-tah-the was also an allottee under said treaty, and on April 1, 1871, having done all things necessary to be done in order to entitle him to become a citizen of the United States, ceased to be a member of said Kickapoo Tribe of Indians, and became a citizen of the United States and of the State of Kansas; that on September 19, 1882, the land in controversy being then vacant and unoccupied, A. E. Letson and L. M. Briggs, in good faith and for a valuable consideration, purchased the same from the said Wy-tah-the and Qua-is, who on that day conveyed it in fee simple to such purchasers by deed of full general warranty, duly executed and delivered, which deed was, on September 28 thereafter, duly recorded in the office of the register of deeds of Atchison County; that, at the date this action was

commenced, whatever right, title or interest in or to said real estate the said grantees acquired by virtue of the execution and delivery to them of said warranty deed, had, by successive conveyances thereof, become vested in the plaintiff in error; that on January 19, 1888, the United States issued a patent for this land in the name of the original allottee, O-ketch-e; that on August 31, 1889, the said Wy-tah-the, by a deed of full general warranty in form, conveyed said forty acres of land to W. C. McClain and Jesse N. Roach, the original plaintiffs herein; that each of said several purchasers of said real estate made their respective purchases in good faith, for a valuable consideration, and without notice of any adverse claims thereto, except such notice as was imparted to them by the record of prior conveyances, and by the actual possession of said real estate by A. E. Letson and L. M. Briggs and those claiming under them.

From these findings of fact, the court held that the deed from Wy-tah-the and Qua-is to A. E. Letson and L. M. Briggs, dated September 19, 1882, was absolutely void, and that the grantees therein acquired no title to the land in controversy; that, by the purchase and deed from Qua-is and her husband, of date August 19, 1886, and the mesne conveyances thereunder, the plaintiff in error acquired all the title which Qua-is had in and to said land, being the undivided one-half thereof; that, by the purchase and deed from Wy-tah-the, of August 31, 1889, and the mesne conveyances thereunder, the defendants in error acquired all the title which Wy-tah-the had in and to said land, being the other undivided one-half thereof; and that the parties to this action were tenants in common, and were entitled to a partition of said real estate. Judgment was rendered in accordance with the conclusions

60          LETSON v. ROACH.

N. Dept.          Opinion.   Clark, J.          5 Kan. App.

of law as so found by the court. Alleging error in
the conclusions of law from the facts found and in
the rendition of the judgment, the defendant Letson
brings the case here.

It will be observed that the title of the plaintiff in
error is based upon a deed of full general warranty,
executed and delivered by Wy-tah-the on September
19, 1882; while the defendants in error ground their
claim to the same land upon a like deed executed by
the same grantor on August 31, 1889. The question
presented, then, is as to whether the deed executed in
1882 transferred title to the real estate therein de-
scribed, and if not, then as to its legal effect upon the
after-acquired interest therein.

By article 2 of said treaty of May 28, 1863, it was
— as to assignments or allotments, and as to the title
or right thereby vested in such allottees — provided:

"When such assignments shall have been com-
pleted, certificates shall be issued by the Commissioner
of Indian Affairs for the tracts assigned in severalty,
specifying the names of the individuals to whom they
have been assigned respectively, and that said tracts
are set apart for the perpetual and exclusive use and
benefit of such assignees and their heirs. Until other-
wise provided by law, such tracts shall be exempt
from levy, taxation, or sale, and shall be alienable in
fee, or leased, or otherwise disposed of only to the
United States, or to persons then being members of
the Kickapoo Tribe, and of Indian blood, with the per-
mission of the President, and under such rules and
regulations as the Secretary of the Interior shall pro-
vide, except as may be hereinafter provided."

No provision was made by law for the sale of such
lands prior to the act of Congress of August 4, 1886.
U. S. Statutes at Large, 1885–7, vol. 24, p. 219. By
section 2 of that act it is provided:

"That where allottees under the aforesaid treaty

LETSON v. ROACH.          61

Jan. 9, 1897.          Opinion.   Clark, J.          E. Div.

shall have died, or shall hereafter decease, leaving
heirs surviving them, and without having obtained
patents for lands allotted to them in accordance with
the provisions of said treaty, the Secretary of the In-
terior shall cause patents in fee-simple to issue for the
lands so allotted, in the names of the original allot-
tees, and such allottees shall be regarded, for the pur-
pose of a careful and just settlement of their estates,
as citizens of the United States and of the State of
Kansas.''

Under section 2448 of the Revised Statutes of the
United States, of 1874, the patent when issued to a
person who has previously died passes the title to the
lands therein patented to, and the same become vested
in, the heirs, devisees, or assigns of the deceased pat-
entee.

On September 19, 1882, under said treaty and allot-
ment, the fee title to this forty-acre tract of land was
in the United States, while the right to perpetual and
exclusive use thereof was vested in Wy-tah-the and
Qua-is, in equal parts, to be by them so held until
otherwise provided by law.   On that day Wy-tah-the
attempted to convey such real estate to A. E. Letson
and L. M. Briggs.   But no title passed to such
grantees ; as they were not members of the tribe of
Kickapoo Indians, and only the United States, or per-
sons who were members of the Kickapoo Tribe and of
Indian blood, could at that time acquire any interest
in said real estate.   It is agreed by all parties to this
action, that, by the provisions of said act of Congress,
the full legal title to the land in controversy became
vested in Wy-tah-the and Qua-is, the sole surviving
heirs of O-ketch-e.   After that act became a law,
Wy-tah-the attempted to convey the land to the
grantors of the defendants in error ; but the plaintiff
in error insists that, as soon as this full legal title be-

62      LETSON v. ROACH.

N. Dept.      Opinion.   Clark, J.      5 Kan. App.

came vested in Wy-tah-the and Qua-is, it instantly passed through them, and, by mesne conveyance, to the plaintiff in error, by virtue of the covenant of warranty contained in the deed of September 19, 1882, and the estoppel thereby created. If he is right in this contention, the court erred in its conclusions of law. Under the findings of fact, Wy-tah-the, on the date of the execution and delivery by him of his deed of general warranty of September 19, 1882, was no longer a member of the Kickapoo Tribe. He was no longer a ward of the nation, but was a citizen of the United States and of the state of Kansas, and was enjoying the full benefits of such citizenship. The same rules should therefore obtain in arriving at a conclusion as to the legal effect of his acts as would be applied to similar conduct on the part of any other citizen. He was at liberty to add to his deed the ordinary covenants of seizin and warranty, and, having done so, Wy-tah-the, and all persons claiming under him through any subsequent conveyance, are estopped by such warranty from asserting title to said premises, as against his former grantees and their heirs and assigns, and from conveying title to any other party. *Jenkins v. Collard*, 145 U. S. 546; *Menger v. Carruthers*, 3 Kan. App. 75; *Scoffins v. Grandstaff*, 12 Kan. 467; *Armstrong v. Portsmouth Building Co.*, 57 id. 62; *Smith v. Williams*, 44 Mich. 240.

The court therefore erred in its conclusions of law, and should have sustained the motion of the plaintiff in error for judgment in his favor upon the findings of fact. The judgment will, therefore, be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.