CHARLES BRUCE v. JACOB LUKE.

DEED; *Quitclaim; After-Acquired Title.* On the 11th of March 1867, a person who had no title to or interest in a certain tract of land made and delivered to another person a deed of said land, using as words of conveyance the words, "grants, bargains, sells, aliens, releases, quitclaims, and conveys," said deed not containing any claim or covenants of seisin, or right to convey, or warranty of title or possession; *held,* that this deed did not estop the grantor from afterwards acquiring title to or interest in said land as against the grantee, and that the after-acquired title or interest will not inure to the benefit of the grantee.

*Error from Wyandotte District Court.*

THE action below was commenced in replevin by *Bruce* to recover the possession of 4,000 railroad ties and 150 cords of wood cut and manufactured by *Luke* from timber standing and growing on the W.½ of S.W.¼ of sec. 29, and E.½ of S.E.¼ of sec. 30, township 10 south, range 24 east, in Wyandotte county. Both parties claimed title to the ties and wood, as owning the land whereon they were manufactured; and each party claimed to derive title to the land from one Isaac Johnnycake; and as the right to the personal property in controversy depended solely upon the question of title to the land, the action by agreement was converted into a proceeding to determine the question of ownership of the land, and the case was referred to D. J. B. to report the facts and conclusions of law. The referee reported that said lands were a portion of the Delaware Diminished Reserve, mentioned in the treaty of July 4th 1866 between the Delaware Indians and the United States; that on the 31st of August 1866 the Secretary of the Interior, James Harlan, entered into a written agreement with the Mo. River Railroad Co. to sell to said company "all lands provided to be sold by said treaty;" that on the 21st of February 1867 said Mo. River Railroad Co., by its proper officers, and for a valuable consideration, executed and delivered to Isaac Johnnycake a bond for a deed of certain of said lands, including the lands in dispute in this action, "said bond binding the company to convey all the title to said lands to be acquired by said company under said treaty;" "that on the 11th of March 1867 said Johnnycake, (reciting that it is in consideration of one dollar, and other valuable consideration,) executed and delivered to Kate L. Simpson a quitclaim deed* for said land," which was duly recorded; that said K. L. S. and her husband on the 4th of May 1868 sold and conveyed said lands by warranty deed, for a valuable consideration, and without notice

[* THIS deed is set out in the opinion of the court, *post*, p. 209. Regarding the title of the Mo. River Railroad Co. to the lands, under its contract with the Secretary of the Interior, see *Simpson v. Greeley*, 8 Kas., 586.—REPORTER.]

of any other claim, to *Charles Bruce;* that on the 8th of May 1867 said Railroad Co. assigned their contract to Alexander Caldwell; that in October 1867 Caldwell paid to the government the purchase-money for said lands, and a patent was issued to him therefor; that in January 1868, on the surrender of the bond given by said Railroad Co., Caldwell executed and delivered to said Isaac Johnnycake a warranty deed for said premises, which was duly recorded; that on the 5th of January 1869 said Johnnycake executed and delivered to *Jacob Luke* a warranty deed for said premises, which was duly recorded; that at the time of the execution of the last-named deed, said *Jacob Luke* had actual notice of the claims of said *Charles Bruce;* and that afterward said *Luke* entered into possession of the premises and cut thereon the ties and cordwood replevied in this action. As conclusions of law the referee found—

"1st. That by the contract between the Mo. River Railroad Co. and James Harlan, Sec'y, etc., no title passed to said Railroad Co. to the premises.

"2d. That the deed from Johnnycake to Kate L. Simpson, being only a quitclaim deed, the after-acquired title by Johnnycake did not inure to the benefit of said Kate L. Simpson, or her grantee.

"3d. That the plaintiff Bruce had no title to the ties or cordwood replevied herein."

The referee's report was duly filed, and at the June Term 1870 of the district court judgment was given on said report in favor of *Luke.* Exceptions were duly taken by *Bruce,* and he now brings the case here on error for review.

*Nelson Cobb,* for plaintiff in error:

1. By the language of the deed from Johnnycake to Kate L. Simpson, any after-acquired title of Johnnycake would inure to the benefit of Simpson. Comp. Laws, p. 354, § 4. The deed acknowledges a valuable consideration, and conveys in the following language: "has granted, bargained, sold, aliened, released, quitclaimed, and conveyed, and does by these presents, grant, bargain, sell, alien, release, quitclaim,

and convey," with a *habendum* in the following language: "to have and to hold the said premises and appurtenances unto the said K. L. Simpson." This language purports to convey title to the land. It does not, like a mere quitclaim deed, purport to convey merely such interest as the grantor may have, but to grant, bargain, sell, alien, release and convey *the land;* and the insertion of the word "quitclaim" detracts nothing from the more comprehensive language of the conveyance. The object of inserting numerous terms of conveyance in a deed is not to restrict the grantee to the weakest, but to give him the benefit of each and all of them to maintain his title, and for that purpose such terms are connected with the conjunction "and."

It is the office of the *habendum* to limit the title granted. The habendum granted in this deed is, "to have, and to hold the said premises and appurtenances unto the said Kate L. Simpson." The term "heirs" being by our statute no longer necessary to convey a fee, and there being no limitation expressed of the duration of the estate, the deed contains the exact language appropriate to convey a fee simple. The "premises" referred to in the habendum means *the land,* not such *interest* therein as the grantee might have, for no such limitation is made in the deed. It declares that she shall hold such land to herself. Certainly such language imports the conveyance of title.

2. By the statute in force when this deed was made, (Comp. Laws, p. 354, § 4,) "where a deed purports to convey a greater interest than the grantor was at the time possessed of, any after-acquired interest of such grantor, to the extent of that which the deed purports to convey, inures to the benefit of the grantee." By the terms of this law we think the after-acquired title of Johnnycake inured to the benefit of Simpson. This exact question was determined in *King v. Gilson,* 32 Ill., 348, in considering the effect of a statute of Iowa exactly like our own, and upon a deed conveying by the operative words, "grant, bargain, and sell," without covenants, and the court held that the after-acquired title of the

grantor inured to the benefit of the grantee. See also, *DeWolf v. Hayden*, 24 Ill., 525; *Dennison v. Eley*, 1 Barb., 610.

It is true that this deed contains no language suitable to raise an implied covenant of title, not because the deed does not purport to convey title, but by an ancient technical rule of the common law, founded on no sound reason, a covenant of title cannot be implied from any word of conveyance except the word "give." See opinion of Chancellor Kent, 2 Caines, 188. The legislature did not mean by the language above quoted that *under a deed with covenants* title subsequently acquired should inure to the grantee, because the covenants of a deed add nothing to the estate conveyed; they are mere guaranties of the estate conveyed: 4 Kent's Com., 519 and 520, and note 6; 10 Coke, 419, (Thomas & Fraser's ed.) Subsequently-acquired title inures on a warranty deed, not on the ground that the *covenants* convey anything, but by way of estoppel, on the ground that the anterior portions of the deed purport to convey title, and the covenants to guarantee it. By the common law a deed conveying land to the grantee, his heirs and assigns, purported to convey a fee simple; and without the word "heirs" it conveyed only an estate for the life of the grantee. A tenant for life or years, conveying to the grantee and his heirs, under that ancient law will pass no title, but forfeit his estate by making a deed purporting to convey a greater title than he had: 1 Wash. on Real Prop., 90, 91. By our statute the word "heirs" is unnecessary to convey a fee simple; and certainly the deed of Johnnycake must purport to convey something.

3. If Simpson's deed were a mere quitclaim deed, under the facts of this case as found by the referee the after-acquired title of Johnnycake would inure to the benefit of Simpson. By the treaty of 4th of July 1866, and their contract with the Secretary of the Interior, the Railroad Co. stood in the position of a purchaser with the purchase merely secured, subject to contingent exceptions in favor of a third party. The exception was waived as to the lands in question,

and the right of the company has ripened into a perfect title. The contract of the Railroad Co. with Johnny-cake carried their right in the land in question to him, and his conveyance to Simpson carried his interest to her, and by her deed the same equity passed to Bruce. Cald-well, taking his assignment subsequently to Johnnycake, and with knowledge thereof, took subject to it, and he took the legal title from the government subject to that equity and held it as trustee for the equitable owner: *Kurtz v. Bargernoff*, 2 Cranch, 701; *Dunlap v. Stetson*, 4 Marsh., 349. Caldwell recognized Johnnycake's equity, and conveyed pursuant to it. The patent to Caldwell related back to the inception of the equitable right of the Railroad Co., and took effect as of that date, vesting the legal title in him for the benefit of the equitable owners: 2 How., 384; 4 Wheat., 213; 7 Peters, 553; 16 Ala., 725. And Luke buying with notice of Bruce's right had no better right than Johnnycake—and he now holds the naked legal title in trust for Bruce, who is the actual owner of the land.

*M. B. Newman*, and *S. A. Cobb*, for defendant in error:

1. On the 11th of March 1867, neither Johnnycake nor his grantor had any title, legal or equitable, in the land in controversy in this suit. In 1866 and 1867 the Missouri River Railroad Co. had no title to the land, legal or equitable: 5 Kas., 362, 615. It follows, then, that all the interest Johnnycake had in the land must have accrued to him *after* the execution of the deed to Simpson, of March 11th, 1867. The claim that the after-acquired title of Johnnycake accrued to Kate L. Simpson, and to the plaintiff as her assignee, and that the defendant is estopped from setting up such title in bar of the plaintiff's claim, is not tenable. The deed must speak for itself; and it nowhere purports to convey a *particular estate*. In fact, no particular estate is anywhere asserted to be in Johnnycake. But there must be some particular estate recited, on which the estoppel can act, before the defendant, the grantee of Johnnycake, for a valuable consideration, is

precluded from setting up the after-acquired title of his grantor in bar of the plaintiff's claim. 11 How., 325; 21 id., 228; 5 Jones, (N. C.,) 63; 13 Wend., 178. The words of grant, or conveyance, in the deed do not *imply a covenant.* They are, "grant, bargain, sell, alien, release, quitclaim and convey." The words, "grant, bargain, sell, alien and confirm," in a conveyance in fee, do not imply a covenant. 2 Caines, 188.

2. It is a general principle that no covenant can be raised which is not expressed, or imported by force of the words used in the deed, by necessary implication. And if the words, "grant, bargain, sell, alien and confirm," do not imply a covenant, can it be seriously contended that a covenant is found in the words "release, quitclaim and convey?" On the contrary, is not the governing word in the whole instrument the word "*quitclaim?*" Does it not impress its character on the whole instrument? Is not this a quitclaim deed? 5 Denio, 664; 14 Johns., 194; 1 Cowen, 616; 39 Mo., 536.

3. There being no recital of a particular estate in Johnnycake, in the Simpson deed — no covenant for title of any kind — no language used which by a fair grammatical construction necessarily implies or raises a covenant — and no covenant of warranty — what is there in the deed that estops us from asserting the after-acquired title of our grantor? If there is no estoppel, then nothing passed by the deed to Simpson but what Johnnycake had *in esse* at the time the deed was made. All the right that Kate L. Simpson took was the interest Johnnycake had when he made the deed — created, existing and apparent — and nothing to be thereafter acquired. 11 Wend., 122; 1 Oregon, 381; 4 Kent's Com., 261; 29 Maine, 185.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin brought by the plaintiff in error, Charles Bruce, against the defendant in error, Jacob Luke, for the recovery of certain railroad

ties and cordwood cut on a certain piece of land of which Bruce claimed to be the owner, but of which Luke was in possession and also claimed to be the owner. Passing over all the preliminary or minor questions which might be raised in the case, we are asked to decide this question only : Who is the owner of the land? In deciding this question there are certain incidental questions which it will not be necessary for us now to consider, for they have already been considered and settled in this court in the case of *Simpson v. Greeley,* 8 Kas., 586. Some of the principles underlying some of these incidental questions were considered and settled in the case of *Douglas Co. v. U. P. Rly. Co.,* 5 Kas., 615. See also *Baker v. Gee,* 1 Wallace, 333.

On the 11th of March 1867 Isaac Johnnycake executed and delivered a deed of conveyance for the land now in dispute to Kate L. Simpson. The land at this time belonged to the United States; (*Simpson v. Greeley,* supra.) On the 17th of October 1867 the purchase-money was paid to the United States, and on the 26th of the same month the patent was issued by the government to Alexander Caldwell. On the 9th of January 1868 Caldwell executed and delivered a deed of conveyance for said land to Johnnycake. On the 4th of May 1868 Kate L. Simpson and her husband executed and delivered a deed of conveyance for said land to Bruce; and on the 5th of January 1869 Johnnycake executed and delivered a deed of conveyance for said land to Luke—Luke having full notice of all the prior deeds. At the time that Johnnycake executed the deed of conveyance to Kate L. Simpson he had no interest in the land that could be conveyed; and the only question now is, whether the after-acquired interest which he received from Caldwell inured to the benefit of Mrs. Simpson.

At the time the deed from Johnnycake to Mrs. Simpson was executed the following statute was in force :

"SEC. 4. Where a deed purports to convey a greater interest than the grantor was at the time possessed of, any after-acquired interest of such grantor, to the extent of that

which the deed purports to convey, inures to the benefit of the grantee." Comp. Laws, 354.

This deed does not purport to convey any particular interest or estate, nor does it anywhere assert or state that Johnnycake was possessed of any particular interest or estate which he could convey; nor is there any covenant of any kind or description whatever anywhere to be found in said deed. The deed, as we think, clearly shows upon its face that it was intended to be only a quitclaim deed of a present and existing but unascertained, unknown, indefinite and uncertain interest. The deed in substance is as follows:

"For and in consideration of the sum of one dollar and other valuable considerations in lawful money of the United States" Johnnycake "grants, bargains, sells, aliens, releases, quitclaims and conveys" unto Kate L. Simpson the land in controversy, "together with all the improvements, ways, easements, rights, privileges and appurtenances to the same belonging or in anywise appertaining, and all remainders, reversions, rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand, either at law or in equity, or otherwise howsoever of the said" Johnnycake, "in, to, or out of said premises."

The two cases referred to by counsel for plaintiff from the Illinois reports are not applicable. The case of *De Wolf v. Hayden*, 24 Ill., 525, was decided under a peculiar statute of Illinois, and the law as there laid down is clearly not the law where such a statute does not exist. The case of *Gibson v. Adams*, 32 Ill., 348, was a decision in Illinois construing an Iowa statute precisely like ours (said § 4, Comp. Laws, 354,) but the decision, or at least the reasoning of the court, was evidently very much affected by their own local laws, and by the hardship of that particular case. The case however differs widely from this. The deed in that case used the words "grant, bargain and sell" only, and did not use the words "release and quitclaim;" nor did that deed use any of many other words which are used in this, which tends to show that this was intended to be only a quitclaim deed. That deed also contained the following covenants, which this

14

deed does not contain, to wit: "That the grantors were well seized, and had good right to sell and convey; that the premises were free from incumbrance, and the grantee, his heirs or assigns should enjoy the quiet and peaceable possession thereof." (32 Ill., 350, 351.) A deed containing the words, "granted, bargained, sold and quitclaimed," is only a quitclaim deed; and the grantor in the same, who had no title to the land at the time he executed the deed, is not estopped from afterwards acquiring the title as against his grantee: *McCracken v. Wright*, 14 Johnson, 194; *Jackson v. Hubbell*, 1 Cowen, 616; and the same with reference to the words, "bargain, sell, release, quitclaim and convey:" *Gibson v. Chouteau's Heirs*, 39 Mo., 536, 566. See also note to *Doe v. Oliver*, 2 Smith's Lead. Cases, (6th Am. ed.,) 709, and cases there cited.

After a careful consideration of the subject we are of the opinion that a deed, such as executed by Johnnycake to Mrs. Simpson, does not estop the grantor, who, at the time of executing the same had no title to or interest in the land mentioned in the deed, from afterwards acquiring title to or interest in said land as against the grantee, and that the after-acquired title or interest will not inure to the benefit of the grantee. The judgment of the court below is affirmed.

KINGMAN, C. J., concurring.

BREWER, J., did not sit in the case.