(October 16, 1909.)

## OLE H. LINN, Respondent, v. ALAMEDA MINING AND MILLING CO., Appellant.

[104 Pac. 668.]

INSUFFICIENCY OF EVIDENCE—AGENCY—RATIFICATION.

1. Evidence in this case examined and held insufficient to support the verdict and judgment.

2. Where L. was employed by M. to do certain work and perform certain services and the labor was performed for M. as principal and the credit was extended to M., no question of agency arises, and the law of ratification is not involved in an action against a third party for the collection of such claim for services.

3. Ratification signifies the adoption or acceptance by the principal of that which was done for and in the name of the principal. The agent or assumed or ostensible agent must have acted as agent and not as principal.

4. The payment by a mining company of certain claims for labor performed on or in connection with its property under employment of a third person does not amount to an adoption or ratification or recognition of the claims of other laborers for services performed for such third person under similar circumstances and at the same time as the claim paid by the company, where the services had all been performed and the labor done prior to such payment.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. W. W. Woods, Judge.

Action by plaintiff for recovery of a debt. Judgment for plaintiff. Defendant appeals. *Reversed.*

46     Linn *v.* Alameda Mining etc. Co.    [17 Idaho,

Opinion of the Court—Ailshie, J.

James A. Wayne, and H. E. Worstell, for Appellant.

In order that an act may be capable of ratification, it must have been performed by one who purports to act as the agent of another. (31 Cyc. 1251.) Even had the Alameda company desired to ratify the work of Mayo-Sachs & Co., it could not have done so, under the law, when Mayo had never assumed to act for it. (*McDonald v. McCoy*, 121 Cal. 55, 53 Pac. 421; *Goetz v. Goldbaum* (Cal.), 37 Pac. 646; *Ellison v. Jackson Water Co.*, 12 Cal. 542; *Mattocks v. Young*, 66 Me. 459; *Ilfeld v. Ziegler*, 40 Colo. 401, 91 Pac. 825; *Johnson v. Johnson*, 31 Fed. 700.)

"If a party prefers to deal with the agent personally, on his credit, he will not be allowed afterward to charge the principal." (*Ford v. Williams*, 21 How. 287, 16 L. ed. 36.)

Gray & Knight, and Wm. K. Shissler, for Respondent.

Even if Mayo had not been authorized to make the contract, the company held him out as having such authority and subsequently ratified the contract, and is estopped from denying his authority. (*Blake v. Domestic Mfg. Co.* (N. J. Eq.), 38 Atl. 241.) In this case the company has acquiesced, accepted and confirmed all of the acts of Mr. Mayo in securing the privilege of opening up the Alameda through the Success and has actually paid for the work of opening it up, except that it has not paid the respondent. (*German Nat. Bank v. First Nat. Bank*, 59 Neb. 7, 80 N. W. 48.)

The presumption of ratification will arise on very slight evidence where the act is plainly for the benefit of the principal. (10 Cyc. 1080, and cases cited; *Clement v. Young-McShea Amusement Co.*, 69 N. J. Eq. 347, 60 Atl. 419; *Pittsburgh etc. Ry. Co. v. Keokuk Bridge Co.*, 131 U. S. 371, 9 Sup. Ct. 770, 33 L. ed. 157.)

AILSHIE, J.—This action was instituted to collect the sum of $1,050 for labor performed by the plaintiff as foreman in the performance of certain work on the defendant's property. Judgment was entered in favor of the plaintiff and defendant moved for a new trial and its motion was de-

nied. Thereupon an appeal was taken from the judgment and order denying a new trial.

The contention made on this appeal is that the court erred in not granting a nonsuit, and that there is no evidence whatever on which to rest the verdict and judgment. There is no substantial conflict in the evidence; what conflict exists is mere detail and does not go to the essential facts.

It appears that in the month of November, 1906, one William L. James owned the majority of the stock of the appellant corporation, and at that time gave Mayo-Sachs & Company of Butte, Montana, an option to purchase his stock, running until some time the following summer. It also appears that at the same time the Alameda company gave Mayo-Sachs & Company permission to enter upon its property and to prospect and develop the same and do such things as they saw fit in order to determine the value of the property, and consequently whether or not they would exercise their option to purchase the James stock. The nature of this latter agreement or permission is very vague, indefinite and uncertain; in fact there is nothing in the record that discloses what officers of the appellant company gave this permission and authority to Mayo-Sachs & Company to enter upon the Alameda property and examine and prospect the same. There is no question, however, but that the authority did exist. The option given by James covered his entire holdings in the appellant company and he was at that time president of the company. The claims belonging to the Alameda company adjoined the property of the Success Mining Company.

After securing this option Mayo of the Mayo-Sachs Company entered into an agreement with Mr. H. F. Samuels, who represented the Success Mining Company, whereby he secured the privilege of working and prospecting the Alameda property through the Success Tunnel No. 2. He accordingly employed the respondent Linn to take charge of the work as foreman and superintendent and to employ men and carry on the work of driving the Success Tunnel into the Alameda property and prospecting the latter property. Respondent accordingly carried on this work, employed men and dis-

charged them, made his reports from time to time to Mayo-Sachs & Company and received checks from them for labor performed until his last claim of $1,050, which was not paid by Mayo-Sachs & Company. In the meanwhile Mayo-Sachs & Company had made such examination of the Alameda property as to satisfy them of its values and, in their opinion, to justify them in taking up their option on the James stock; and they accordingly made final payment for the same on June 18, 1907, and thereupon they reorganized the directorate of the Alameda Company, and elected one of their firm president and others, either óf their firm or of their friends, to constitute a majority of the board of directors. Up to this time Mayo-Sachs & Company had had no connection with the Alameda company, held no stock in the company, and were in no way identified with the company except by reason of the option they held on the James stock. Subsequent to the election of the new officers in the Alameda company, Linn presented his claim to the company. It refused to pay and he thereafter instituted this action.

There is no contention made by the respondent that he was employed by the Alameda company, nor does he contend that he thought Mayo represented the company. He admits in his evidence that he was employed by Mayo and knew that he was working for Mayo-Sachs & Company, and that he had all of his dealings with the latter company. He does not claim that he performed any of this labor under the belief or understanding that he would be compensated by the Alameda company; and no contention is made whatever that the Alameda company ever contracted with him or represented that it would pay him, or that he ever in any way understood that he was performing any services for the company. The sole contention made by the respondent for an affirmance of the judgment in this case is on the ground of ratification. The evidence on which he rests that contention is substantially as follows:

It appears that James was running a boarding-house near the Success mines and, according to Linn's evidence, was about the Success Tunnel No. 2 several times while Linn was

working there, and knew of Linn's work and talked with him relative to the work and the prospects in the Alameda property. James also talked with Mr. Samuels, the manager and representative of the Success company, in reference to the option given to Mayo-Sachs & Company and the prospecting and developing work being carried on by Mayo, and also spoke to him about the contract Mr. Samuels had entered into with Mayo with reference to his working in the Success Tunnel No. 2. He also told Samuels that Mayo was representing the Alameda. Samuels says that he did not know in what capacity Mayo was acting but that he supposed he was representing the Alameda company.

Subsequent to the final purchase by Mayo-Sachs & Company of the James stock and the election of new officers for the Alameda company, the board of directors paid Mayo-Sachs & Company either a part or all of the expense they had incurred in doing this prospecting and developing work through the Success Tunnel No. 2. The evidence is very vague and rather obscure on this point. As we view it, however, it is of no consequence in this case. It all occurred after the completion of the work, and in no way influenced Linn's action or deceived or misled him in any way, and it carried no promise to pay him.

Ratification signifies the adoption or acceptance by the principal of that which was done for and in the name of the principal. The agent or assumed or ostensible agent must have acted as agent and not as the principal. (Clark on Contracts, sec. 303; *Minnich v. Darling*, 8 Ind. App. 539, 36 N. E. 173; *Mitchell v. Minnesota Fire Assn.*, 48 Minn. 278, 51 N. W. 608; *Backhaus v. Buells*, 43 Or. 558, 73 Pac. 342.) Linn does not claim that he contracted with Mayo as the agent of the Alameda company or that he thought him to be the agent of that company. He does not claim to have parted with his labor through any false impression given by James or the Alameda company, nor does he claim that he at any time thought or had reason to believe that the latter company would pay him. The fact that the Alameda company may have, after the work was completed, paid Mayo-

Sachs & Company for some or all of the money they had expended or work they had caused to be performed through the Success Tunnel would not of itself obligate them to pay anyone else, nor would it mislead anyone who had already performed labor on the faith of Mayo's credit, nor would it create any element of estoppel against the Alameda company or impose any liability against them for other debts of Mayo-Sachs & Company that had been previously incurred.

As to the receipt of benefits, this is not a case like one of the purchase of goods or the like where the party must restore the articles or pay for benefits received. This work was done through the tunnel of another property and for the sole purpose of satisfying Mayo-Sachs & Company as to the value of the Alameda property. It was not done for the development or permanent improvement of the company's property. It may or may not have resulted in improving the property. While it demonstrated that the property is of some value, this work, done through the Success Tunnel, cannot be of any permanent use to the Alameda property unless they can secure the right to work the property through the Success Tunnel No. 2. It is of such a character that the thing received cannot be returned or be of any possible benefit to the one who did the work; and so he cannot suffer on account of mere failure to return.

We do not mean to be understood as holding that the Alameda company could not obligate itself to pay this claim. On the contrary, it could undoubtedly assume this debt and obligate itself to pay the same, but not under the law of ratification. This was clearly the debt of another. The credit was not extended to the Alameda company but was given to Mayo and his firm. It was the debt of Mayo and Mayo-Sachs & Company so far as this record discloses.

Judgment *reversed;* and in view of the condition of the case and of the record before us we will grant a new trial, so that if the respondent feels that he can make a case within the rules of law herein announced, he may again submit his proofs against this appellant. Costs awarded in favor of *appellant.*

Sullivan, C. J., and Stewart, J., concur.