# BRAGDON v. McSHEA.

No. 918.    Opinion Filed March 8, 1910.

(107 Pac. 916.)

1. **APPEAL AND ERROR—Review—Findings of Master—Conclusiveness.** The report of a master in chancery, made in a chancery case in one of the United States courts of the Indian Territory prior to statehood, where the reference to the master was not made by consent, is as to finding of facts made by the master only persuasive, and his findings may be reversed, unless the same are sustained by a preponderance of the evidence.

2. **SAME.** But the legal presumption, where the evidence is conflicting, is that the findings of fact of the master are correct, and his reports will not be set aside, unless it appears with reasonable clearness that he has fallen into a mistake of fact.

3. **ESTOPPEL—"Estoppel by Silence."** In order for the silence of a party to constitute an estoppel against him, it must have occurred under such circumstances as to have made it his imperative duty to speak, and the party in whose favor the estoppel is invoked must have been misled into doing that which he would not have done but for such silence.

4. **INDIANS—Estoppel—Alienation of Lands — Restrictions—Case.** A corporation loaned to a minor Creek freedman a sum of money and took from said Creek freedman on June 17, 1905, her deed to 40 acres of her surplus allotment to secure the payment of the sum of money advanced to her. M. subsequently, on September 25, 1905, purchased from her during her minority her entire surplus allotment of 120 acres, at which time he inquired of the corporation the amount of their interest and claim in the land and the sum of money that would be required to secure a release of its interest in the same, and, upon being informed of the amount, paid the same to the corporation, which executed a quitclaim deed to the Creek freedman, releasing and quitclaiming its interest in said 40 acres of land back to her. All of said transaction on the part of the corporation was conducted by its president and secretary, who owned all the stock of said corporation except one share. M. took an affidavit of the Creek freedman that she was then of age. The officers of the corporation had no knowledge of such affidavit, but at the time of the transaction had knowledge leading them to believe that the Creek freedman was not of age. No statement or representation whatever was made by the officers of the corporation to M. as to the age or capacity of said Creek freedman to convey her allotment. Held, that said deeds to the corpora-

tion and to M. were, by reason of section 16 of the act to rati-
fy and confirm a supplemental agreement with the Creek In-
dians, approved June 30, 1902 (chapter 1323, 32 Stat. 500), abso-
lutely void and not susceptible of ratification in any manner by
the grantor; and that said officers of the corporation who pur-
chased the land from the Creek freedman after she became of
lawful age were not estopped in an action brought to cancel
the deed given by her to M. during her minority, from asserting
that she was at that time a minor, and her deed void.

(Syllabus by the Court.)

*Appeal from the United States Court for the Western District of
the Indian Territory, at Muskogee; William R. Lawrence, Judge.*

Action by J. C. McShea against Marshall L. Bragdon. Judg-
ment for plaintiff, and defendant appeals. Affirmed.

This action was originally instituted in the United States
Court for the Western District of the Indian Territory, at Musko-
gee, where judgment was rendered on the 30th day of October,
1907, in favor of appellee, J. C. McShea, from which judgment
an appeal was taken to the United States Court of Appeals of the
Indian Territory before the admission of the state; and that ap-
peal is now, under the provision of the enabling act (Act June
16, 1906, c. 3335, 34 Stat. 267), before this court for final
disposition.

There is involved in this action the title to 120 acres of land
and the title to an agricultural lease on 40 acres of land adjoin-
ing the aforesaid 120 acres. Said tracts of land constitute, respec-
tively, the surplus and homestead allotment of Myrtle McIntosh, a
duly enrolled Creek freedman. The material facts out of which the
case arose, and that are important to the consideration of the ques-
tions presented by this appeal, are substantially as follows: On June
17, 1905, the Southwestern Land & Investment Company, a corpora-
tion, of which one Howard E. Bell was president and appellee was
secretary, loaned to Myrtle McIntosh a sum of money and took
from her to secure the payment of same a deed to 40 acres of the
land in controversy. In the month of September, 1905, appellant,
defendant below, purchased from Myrtle McIntosh 120 acres of
the land in controversy, and received from her a warranty deed

conveying same to him.  On February 19, 1906, Myrtle McIntosh executed and delivered to Howard E. Bell her warranty deed conveying the same land, and on the same day executed and delivered to Bell an agricultural lease on her 40-acre homestead.  On April 30, 1906, Bell and wife conveyed by warranty deed the 120-acre tract to appellee, J. C. McShea, and later, on May 26, 1906, assigned to him the lease on the 40 acres.  On February 21, 1906, appellant obtained a second deed to him from Myrtle McIntosh for the 120 acres of land.  Appellee brought this action setting up as his chain of title the lease and warranty deed from Myrtle McIntosh to Bell and the warranty deed and assignment of the lease from Bell and wife to him, and alleged that, at the time of the execution and delivery by Myrtle McIntosh of her first warranty deed and lease to appellant, she was not then of age, and that said deed and lease for that reason were void, but that they and the second deed obtained by appellant constitute a cloud upon his title, and prayed for a cancellation of said deeds and lease.  The judgment of the trial court awarded to appellee all the relief prayed for in his petition.

*Preston C. West* (*Harlow A. Leekly* and *Earnest L. Kistler,* of counsel), for appellant.

*Edgar A. de Meules, Geo. S. Ramsey,* and *C. L. Thomas,* for appellee.

No briefs reached the reporter.

HAYES, J. (after stating the facts as above).  Appellant makes two contentions for reversal of this cause.  He contends, first, that the master in chancery erred in finding that Myrtle McIntosh was, on the 25th day of September, 1905, when she executed to appellant her first warranty deed conveying the 120 acres of land in controversy, and when she executed to him a lease on her 40-acre homestead, a minor.  He contends, second, that, if she was at said times a minor, by reason of the matters pleaded by him in his answer and established by evidence, appellee is estopped from asserting as against appellant that she was at said times a minor.  We shall consider these contentions in the order here stated.

1. At the threshold of our consideration of the first proposi-
tion, we meet with a difference in the contentions of counsel as to
what rule shall govern us in determining whether the master in
chancery erred in his findings of fact as to the age of Myrtle Mc-
Intosh. Appellee contends for the rule that where there is any
evidence reasonably tending to support the findings of the master,
and the same have been confirmed by the trial court, this court
should not disturb his report. Appellant contends that the trial
here in this court is *de novo,* and that this court should weigh the
evidence, and, if it be found that the master has found against the
decided weight of the evidence, his report should be set aside, and
this court make its own findings. The former of these rules now
prevails in this jurisdiction under the statutes extended in force
upon the admission of the state. But it has heretofore been de-
cided by this court that on review of judgments rendered in the
United States courts of Indian Territory before the admission of
the state upon reports of master in chancery, where the reference
was not made by agreement of the parties, the latter rule governs
us (*Horn et ux. v. Gibson,* 24 Okla. 481, 103 Pac. 563) ; but, where
the evidence is conflicting, the legal presumption is that the find-
ings of fact of the master are correct, and his report will not
be set aside, unless it appears with reasonable clearness that he has
fallen into a mistake of fact (*Blakemore v. Johnson,* 24 Okla. 544,
103 Pac. 555). The reference to the master in this case was not
by agreement, but by general order of the court.

We have carefully read the record in this case and weighed
the evidence therein, and, testing the same by the foregoing rule,
we cannot say that the master committed error in finding Myrtle
McIntosh to be a minor on September 25, 1905, when she executed
her first warranty deed to appellant, and that she was not of age
until February 18, 1906. Section 16 of the act to ratify and con-
firm a supplemental agreement with the Creek Indians, approved
June 30, 1902 (chapter 1323, 32 Stat. 500), provides:

"Lands allotted to citizens shall not in any manner whatever
or at any time be incumbered, taken, or sold to secure or satisfy
any debt or obligation nor be alienated by the allottee or his heirs

before the expiration of five years from the date of approval of this supplemental agreement. * * * Any agreement or conveyance of any kind or character in violation of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

These treaty provisions were, as to minor Creek freedmen, in force at the time of the execution of the deed by Myrtle McIntosh to appellant, and said deed was therefore absolutely null and void and incapable of ratification. *Blakemore v. Johnson, supra. Colbert v. Alfer et al.*, 168 Fed. 231, 93 C. C. A. 517.

2. We now pass to the second question: Is appellee, by reason of any conduct on his part connected with the transaction by which appellant purchased from Myrtle McIntosh on September 25, 1905, the land in controversy, estopped from asserting that Myrtle McIntosh at that time was not of age, and the conveyance by her to appellant void? We think not. Mr. Biglow, at page 726, 16 Cyc., declares the essential elements of an equitable estoppel to be: First, there must exist a false representation or concealment of material facts. Second, it must have been made with knowledge, actual or constructive, of the facts. Third, the party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts. Fourth, it must have been made with the intention that it should be acted upon. Fifth, the party to whom it was made must have relied on or acted upon it to his prejudice. To apply these principles of estoppel and determine whether an estoppel has been established in this case requires us to review briefly the facts.

Prior to June 17, 1905, the Southwestern Land & Investment Company, a corporation, had advanced or loaned to Myrtle McIntosh a sum of money, and on that day they took a deed from her for 40 acres of her land to secure the payment of her indebtedness to it. On the same day, Evaline McIntosh, her mother, made an affidavit that Myrtle McIntosh was born on the 19th day of February, 1887. This transaction between the corporation and Myrtle McIntosh was conducted by Howard E. Bell and appellee,

who were officers of the company and owned all of its stock except one share. Appellant testifies that the person drawing the affidavit of Evaline McIntosh committed error therein, in that it stated the year of Myrtle McIntosh's birth to be in 1887, instead of 1888; that immediately after the execution and delivery of the affidavit Evaline McIntosh returned to the office of the company and explained that such error had been made and asked for its correction; that both appellee and Bell were informed of this mistake; that they then knew or believed that Myrtle McIntosh was not at that time of age; that the deed was taken from her for the purpose and with the view that she would not sell the land to any one else without paying the amount of her indebtedness; and that no one else would buy it without requiring her to pay it and clear the title. On September 25, 1905, appellant, desiring to purchase the Myrtle McIntosh allotment of 120 acres, with knowledge that the Southwestern Land & Investment Company had a claim upon a portion of the land, went to Myrtle McIntosh to purchase it. After ascertaining that he and she could reach terms, he proceeded either in person or by agent to ascertain from appellee information as to the amount of his claim against the land and for what sum he would relinquish the company's interest therein. He was informed by appellee that the amount of the company's claim was $337, and upon payment of that sum it would relinquish its claim. Appellant testifies that, acting for Myrtle McIntosh, he paid appellee the sum of $337, whereupon the Southwestern Land & Investment Company executed to Myrtle McIntosh its quitclaim deed, whereby it released, quitclaimed, and conveyed unto her all its rights, title, claim, and demand in and to the 40 acres of land theretofore conveyed by her to it. The company was at this time in possession of the affidavit of Evaline McIntosh, but this fact was not imparted to appellant. No inquiry was made of the company or of its officers by appellant as to the age of Myrtle McIntosh or as to the kind and character of title it had in the property, and no representation or statement was made by appellee or other officers of the company relative thereto. It was not until after the entire

transaction had been consummated and the deed executed by Myrtle McIntosh to appellant that appellee told appellant of the existence of Evaline McIntosh's affidavit, at which time said affidavit was given to appellant and he was told by appellee that Myrtle McIntosh was not of age. When appellant purchased the land from Myrtle McIntosh and took her deed therefor on the 25th day of September, 1905, he also took her affidavit to the effect that she was then of age. After she became of age on February 18, 1906, Howard E. Bell bought from her her entire surplus allotment of 120 acres and took a lease on her 40-acre homestead. He in turn afterwards conveyed the land and assigned the lease to appellee. The negotiation between Bell and Myrtle McIntosh which resulted in her conveying the land and assigning the lease to him was conducted by appellee as the agent of Bell.

We think, if the facts in this case would be sufficient to estop the land company from asserting the minority of Myrtle McIntosh at the time she conveyed the land to appellant, if it, after she had attained her majority, had purchased from her the land in controversy, Bell and appellee, his grantee, with knowledge of all the facts, would likewise be estopped, for the transactions between the company and appellant was conducted by Bell and appellee who were in possession of all the facts known to the company; and they, as the owners of all the stock except one share, were the beneficiaries of the transaction whereby the company's debt was paid and its interest in the 40 acres relinquished back to Myrtle McIntosh. It is not contended that appellee made any misrepresentations or was guilty of any active fraud that misled appellant or induced him to purchase the land from Myrtle McIntosh and to furnish the money with which her debt to the company was paid. The precise conduct of appellee upon which appellant must base an estoppel, if there is any estoppel, is: That appellee, when appellant acting for Myrtle McIntosh paid to appellee as officer of the company the sum of $337 in payment of its claim against Myrtle McIntosh, to secure which she had conveyed a part of the land in controversy, did not disclose to him his

knowledge or information then possessed by him to the effect that
Myrtle McIntosh was not of age; and that he was silent when he
ought to have spoken.    The mere possession by appellee of the
affidavit of Evaline McIntosh in which by mistake it had been
stated that Myrtle McIntosh was of age, without appellant's
knowing that appellee possessed such affidavit or the contents
thereof before he purchased from Myrtle McIntosh and paid to
the company the amount of its claim against the land, constitutes
no estoppel.   No use was made of this affidavit by appellee to de-
ceive or mislead appellant, and appellant had no knowledge of its
existence, until after the entire transaction had been consummated.
The representations or conduct relied upon to raise an estoppel
must have been concurrent with or anterior to the action which
they are alleged to have influenced.    16. Cyc. 241.    A party may
be estopped by his silence from asserting the truth, but the cir-
cumstances under which he was silent must have been such as to
have made it his duty to speak, and it is essential, not only that
he had knowledge of the facts, but that the adverse party was
ignorant of them, and was misled into doing that which it would
not have done, but for such silence.    16 Cyc. 759, and authorities
there cited.

Appellant's case is lacking, in our opinion, in two of these
essentials.    The circumstances surrounding the transaction by
which appellant obtained his deed from Myrtle McIntosh were not
such as to have made it the imperative duty of appellee to impart
to him the information he had relative to Myrtle McIntosh's age,
which led appellee then to think and believe that she was a minor;
nor does the evidence establish that by his silence appellant was
misled or induced to purchase the land from Myrtle McIntosh,
which he would not otherwise have done.    No effort whatever
was made by the Southwestern Land & Investment Company or
its officers to induce appellant to buy any portion of this allotment.
He went to the allottee, Myrtle McIntosh, not to the land company,
to purchase this 120 acres of land.    The land company did not
make any claim to 80 acres of it.    Appellant, it is true, knew that

the land company had been dealing with Myrtle McIntosh relative to this land; but the fact that it had dealt with her as if she had the capacity and the right to convey her land cannot alone be successfully relied upon by appellant to estop the company or appellee from asserting now that she had no right or capacity to convey, and the fact is he did not rely upon these circumstances in dealing with her. He made his own investigation as to her age and took from her, before he ever attempted to obtain from the land company a release of its interest on the 40 acres, her affidavit to the effect that she was then of age. Appellee's company had a debt against Myrtle McIntosh, the payment of which was secured by a void deed. The company had the right to collect this debt, if the debtor was willing to pay; it had a right to receive funds that Myrtle McIntosh had obtained from the sale of her lands, although she was without power to make the sale thereof, if, the company was guilty of no fraud, active or passive, in procuring the sale. Can it be said that if appellant had, when he agreed with Myrtle McIntosh upon terms of his purchase, given to her the money with which to pay off the claim of the company and obtain its release of the land, and she had gone and paid same and obtained a release, the company, with knowledge that the money with which its debt was paid was the proceeds of her sale, would, for that reason, have had imposed upon it the duty of warning appellant of the defects in his grantor's title, or of imparting to him the information it had as to her minority, and that its security was valueless?

The company and its officers had no knowledge that any deceit or misrepresentation had been practiced by Myrtle McIntosh upon appellant, or that he had or had not made an investigation that convinced him of her right to sell. It did not conceal its claim of interest in the land, and appellee does not now seek to enforce any right he or it then had. No representation was made by appellee or his company that it had a good and perfect title to the 40 acres. It did not convey the land to appellant, but only released the right, title, and interest it then had in the land back

to Myrtle McIntosh, upon payment of the debt to secure which the deed had been executed to it. The quitclaim deed contains no claim or covenant of seisin or right to convey or warranty of title or possession. It was sufficient to convey all the interest the company then had in the land, which was all it undertook to convey; but the company, in fact, had no title or interest whatever in the land at that time. Its deed from Myrtle McIntosh, like the deed of appellant executed to him on September 25, 1905, was absolutely void, for the reason that it was executed during her minority in violation of the statute. The execution of the quitclaim deed by the company to Myrtle McIntosh did not, and it would not, if it had been executed to appellant, estop the company or appellee from subsequently acquiring the title to the land from whomsoever owned the same, and when acquired the title would not pass to the grantee under the quitclaim deed. *Simpson v. Greeley et al.,* 8 Kan. 586; *Bruce v. Luke,* 9 Kan. 201, 12 Am. Rep. 491; *Ott v. Sprague,* 27 Kan. 620; *Johnson v. Williams,* 37 Kan. 179, 14 Pac. 537, 1 Am. St. Rep. 243; 9 Am. & Eng. Encyc. of Law, 106, and authorities cited.

*Scoffins v. Grand staff et al.,* 12 Kan. 467, is a case in which the facts are very similar and in which a portion of the reasoning of the court is very apposite to the case at bar. In that case one Bigknife, a Shawnee Indian, was the owner of an allotment of land which, under the treaty provisions and acts of Congress, he was without power to alienate except with the consent of the Secretary of the Interior. He executed a warranty deed for said allotment to Scoffins without the approval of the Secretary of the Interior. Scoffins sold and executed a warranty deed for same to Robert Adams. Adams conveyed by quitclaim deed to Ann Purdon. Ann Purdon's grantees conveyed to Grandstaff, the defendant in the action. After Scoffins had conveyed to Adams, Bigknife, with the consent of the Secretary of Interior, conveyed the land to Harry McBride. Harry McBride conveyed it to Scoffins. When the title became vested in Scoffins under the deed from McBride to him it inured to the benefit of Robert Adams by reason

of the warranty deed theretofore executed by Scoffins to him. Later, however, Adams conveyed by quitclaim deed to Scoffins, and Scoffins brought an action for possession. The court in the opinion said:

"The real question presented by the foregoing facts is: Who owns said land, William Scoffins, the plaintiff, or Abraham and Ellen Grandstaff, the defendants? It is admitted that the deed from Bigknife to Scoffins was void, and conveyed no title. And for that reason it is also admitted that the deeds from Scoffins to Adams, and from Adams to Purdon, under whom the Grandstaffs now claim, did in like manner convey no title. While, on the other hand, it seems to be admitted that the deeds from Bigknife to McBride, and from McBride to Scoffins, passed the title to Scoffins. And we suppose it will also be admitted that under our statutes the title, when it passed by said deed to Scoffins, immediately inured to the benefit of Scoffins' grantee, to wit, Adams' Comp. Laws, 354, § 4; Gen. St. 185, c. 22, § 5. But as the deed from Adams to Purdon was only a quitclaim deed, purporting to convey only the interest that Adams had in the land at the time of the conveyance, and nothing more, said title did not, and could not, when Adams received it, inure to the benefit of Purdon, or to the benefit of any of Purdon's grantees. *Simpson v. Greely,* 8 Kan. 586, 597, 598; *Bruce v. Luke,* 9 Kan. 201, 207, *et seq.* And, therefore, we suppose it follows that Adams might have retained the title to said land forever, if he had so chosen, and neither Purdon nor any of her grantees would have had any action against him on that account, nor any defense to an action brought by Adams for the possession of the land. And we suppose it also follows that Adams might have sold and conveyed his title to any one except Scoffin, and the grantee under such conveyance would have had the same right that Adams himself possessed. But Adams did not retain the title to said land, nor did he transfer it to some person other than Scoffins; but after the title had inured to him as aforesaid he transferred the same back to Scoffins by a quitclaim deed, and therefore the question of who has the title now comes up between Scoffins and Purdon's grantees, to wit, the said Grandstaffs."

The court held that Scoffins could not recover, but did so upon the ground that when he conveyed to Adams he covenanted and agreed that he was the lawful owner of the premises, free

and clear of all incumbrances, and that he would warrant and defend the same in the quiet and peaceable possession of Adams and his heirs "and *assigns* forever." The court held that the covenant for "quiet and peaceable possession" ran with the land, and was for the benefit not only of the grantee, but of his assigns, whether they held under warranty deed or quitclaim deed; and that while Adams, who had conveyed by a quitclaim deed to the grantors of Grandstaffs, was not estopped to assert his after-acquired title against his grantees and assigns, Scoffins, who had conveyed by warranty deed with covenants running with the land to the assigns of his grantee, could not recover.

Myrtle McIntosh's first deed to appellant and her deed to the land company were both absolutely void by reason of section 16 of the supplemental agreement, *supra,* and incapable of ratification by her when she became of age. On her attaining her majority, she had a right to convey her land to whomsoever she chose, and Bell had the right to purchase, and his grantee, appellee, obtained a good title. When she executed her second deed to appellant, she had no title in the land to convey, and the only effect of this deed was to cloud the title of Bell and his grantees.

In response to the contention of counsel for appellant that the defense of an equitable estoppel has been established in this case, counsel for appellee urges that by reason of that portion of section 16 of the Creek Supplemental Agreement, *supra,* which provides that any agreement or conveyance made in violation of the provisions of said section shall be void, and "not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity," renders the defense of equitable estoppel not available in this proceeding. Since, under our view of the facts, some of the essential elements of equitable estoppel have not been shown by the evidence, it is unnecessary to determine whether, if established, such defense would be available.

Finding no error in the record requiring a reversal of the case, the judgment of the trial court is affirmed.

DUNN, C. J., and KANE and TURNER, JJ., concur; WILLIAMS, J., not participating.