## MADILL STATE BANK v. WEAVER.

No. 3732.   Opinion Filed April 13, 1915.

Rehearing Denied March 7, 1916.

(154 Pac. 478.)

1.   **BANKS AND BANKING—Checks—Charge Against Deposit.** A bank may charge to the account of a depositor the checks of a third party, not purporting to be·drawn in behalf of such depositor nor against such account, only upon the actual direction of the depositor.

2.   **PRINCIPAL AND AGENT—Acts Susceptible of Ratification.** The rule as to "ratification" is applicable only where the act alleged to have been ratified by another purported to have been for or in behalf of such other.

3.   **ESTOPPEL—Estoppel in Pais—Silence.** Only where the conduct of one who kept silent when he should have spoken has misled another or prejudicially affected another's conduct may the latter successfully plead an estoppel in pais against the former.

(Syllabus by Thacker, C.)

*Error from District Court, Marshall County;*

*A. H. Ferguson, Judge.*

Action by Lula J. Weaver against the Madill State Bank. Judgment for plaintiff, and defendant brings error. Affirmed.

Plaintiff in error will be designated as defendant and defendant in error as plaintiff, in accord with their respective titles in the trial court. This case was tried to a jury, and resulted in a judgment for plaintiff for $500. ·

On January 28, 1911, plaintiff, in her own name, deposited $1,581.50 of her own money in defendant bank, which amount was then entered in a passbook then furnished her by the bank. On February 1, 1911, her husband deposited for her and procured to be entered in her passbook an additional sum of $4,913.43 of her own money, making a total of $6,494.93, which was all of her own money ever deposited to her credit in the defendant bank. On February 27, 1911, her husband deposited of his own money, or of the money of himself and business partner, the further sum of $2,410.22 to her credit in defendant bank, making a total of $8,905.15 deposited to her credit up to and including said date, which was all that was so deposited until after March 3, 1911. But her husband and his business partner thenceforth made numerous deposits of their own money to her credit in this account until July 5, 1911, when the account was closed, and her husband kept her passbook, which she did not see from March 3, 1911, until the account was closed. Plaintiff drew checks to the amount of $3,021.24 against said account, the greater part of same having been drawn before March 3, 1911. Commencing in February, 1911, her husband and his business partner each drew checks upon defendant bank in the name of her husband and in no way purporting to be against her account, which checks the defendant bank charged to her account as it did her own checks. On March

3, 1911, her passbook having been balanced on that date, she examined the same and the canceled checks that had been charged to her account, which showed, as she observed, that her husband's checks, as she had otherwise known since some time in February, and his partner's checks in her husband's name, of which she was not before aware, had been charged to her account with her own checks. At this time the aggregate amount of the checks charged to her account was $6,485.19, including more than $500 represented by checks drawn by her husband's partner as aforesaid, so that the balance then to her credit in the account was $2,419.96. She then protested to her husband against permitting his partner to draw any more such checks to be charged to her account. Her husband then assured her, and she thenceforth believed, that no more such checks would be drawn or charged to her account. She made to her husband no other objection to the act of the bank in charging other than her own checks to her account and made no objection whatever to the bank. The defendant bank unsuccessfully contended and produced evidence, which was denied by the plaintiff, that at the time of plaintiff's first deposit she informed said bank that either she or her husband or both would check against her account; and, apparently relying upon this contention, the defendant bank made no effort to prove that in charging other than her own checks to her account it was in any instance influenced by her silence or knew or believed she had been apprised of the facts in this regard. So far as appears, defendant's course of conduct in respect to this account was not caused nor affected by plaintiff's knowledge and failure to object, but was wholly independent of her. The defendant did not ask plaintiff for authority to charge other than her own checks to her account nor re-

quire her husband or his partner to so much as assert authority to draw against the same by signing her name to the checks. Nor is there any direct evidence that either her husband or his partner so much as attempted to authorize the bank to so charge their checks to her account; and the defendant's conduct in this regard is wholly unexplained, except by its unsuccessful contention that she informed it at the time of her first deposit that she or her husband or both would draw against the account, and by circumstantial evidence tending to show that, within its knowledge, except as to the two deposits of her own money, the funds deposited belonged to her husband or to him and partner. Although she brought this action for the $6,494.93 deposited by her, less $3,021.24 as the aggregate amount of her individual checks, plus $1,200 her husband drew out of bank and, at her request, applied to the payment of her note, in her testimony at the trial she disclaimed any purpose to complain of the action of the defendant in charging the checks drawn by her husband against her account; and we therefore may assume that the verdict of the jury, which was for only $500, was for that amount of her deposit drawn out by her husband's partner prior to March 3, 1911, when she first discovered that such checks had been charged to her account, and these checks only are now regarded as the subject of controversy.

*Kennamer & Coakley* and *McReynolds & Hay,* for plaintiff in error.

*Franklin & March,* for defendant in error.

Opinion by THACKER, C. (after stating the facts as above). A bank may charge to the account of a depositor the checks of a third party, not purporting to be drawn by such depositor nor against such account, only upon the

actual direction of the depositor. *Seaboard National Bank v. Bank of America,* 193 N. Y. 26, 85 N. E. 829, 22 L. R. A. (N. S.) 499; *Critten v. Chemical Nat. Bank,* 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529.

The defendant bank could not prevail in this case upon the ground of a "ratification," for the obvious reason that there is no evidence whatever so much as tending to prove that plaintiff's husband or his partner acted or pretended to act as the agent or representative of the plaintiff in respect to the checks drawn by said partner or to the charging of the same to her account. *Virginia Pocahontas Coal Co. v. Lambert,* 107 Va. 368, 58 S. E. 561, 122 Am. St. Rep. 860, 13 Ann. Cas. 277; *Linn v. Alameda Min. & Mill Co.,* 17 Idaho, 45, 104 Pac. 668; *Stanton v. Granger,* 125 App. Div. 174, 109 N. Y. Supp. 134; *Austin v. Jones,* 148 Ala. 659, 41 South. 408; *Backhaus v. Buells,* 43 Or. 558, 72 Pac. 976, 73 Pac. 342.

The defendant bank does not appear to have known or to have assumed that plaintiff was apprised of its practice of charging the partner's checks to her account; and it cannot prevail upon the ground of estoppel, because it was not misled or affected by her silence, but apparently acted independently of her knowledge and silence. *Bragdon v. McShea,* 26 Okla. 35, 107 Pac. 916; *Rogers v. Portland & B. St. Ry.,* 100 Me. 86, 60 Atl. 713, 70 L. R. A. 574; *Dye v. Crary,* 13 N. M. 439, 85 Pac. 1038, 9 L. R. A. (N. S.) 1130; *Williams v. Neely,* 134 Fed. 1, 67 C. C. A. 171, 69 L. R. A. 232; *Richards v. Shepherd,* 159 Ala 663, 49 South. 251.

For the reasons stated, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.